**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE CRAWFORD, et al., | Case No.: 1:20-cv-05132 |
| Plaintiffs, | Hon. Steven C. Seeger |
| v. | |
| MCDONALD'S USA, LLC, a Delaware limited liability company, and MCDONALD'S CORPORATION, a Delaware corporation, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' RULE 12(B)(6)**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT .................................................................................................................... 2

I.  PLAINTIFFS' § 1981 CLAIMS ARE LARGELY TIME-BARRED AND
    INSUFFICIENTLY PLED. ....................................................................................... 2

    A.  Most of Plaintiffs' § 1981 Claims Are Time-Barred. ............................................ 3

    B.  Plaintiffs Fail to Plausibly Allege Intent to Discriminate. ..................................... 6

    C.  Plaintiffs Fail to Plead "But-For" Causation. ......................................................... 9

II.  PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.......... 11

    A.  Plaintiffs Have Not Pled an Actionable Breach of Any Obligations by
         McDonald's.......................................................................................................... 11

    B.  Plaintiffs' Conclusory Allegations of "Unreasonableness" Are Insufficient
         to Support a Viable Breach of Contract Claim. .................................................... 15

    C.  The Amended Complaint Facially Demonstrates that Count II Is Largely
         Time-Barred. ........................................................................................................ 16

III.  THE FRAUDULENT OMISSION CLAIM FAILS AS A MATTER OF LAW. ............ 17

    A.  Plaintiffs Do Not Plead a Duty to Disclose in the Amended Complaint, nor
         Address the Required Element in Their Opposition Brief..................................... 18

    B.  Plaintiffs Fail to Plead Material Omissions with Particularity Under Rule
         9(b)........................................................................................................................ 19

    C.  Plaintiffs Cannot Establish that They Could Not Have Learned the Truth
         About the Alleged Omissions with Reasonable Inquiry....................................... 21

    D.  Given the Explicit Disclosures in the FA and FDD, Plaintiffs Cannot
         Establish Reasonable Reliance or McDonald's Intent to Induce a False
         Belief.................................................................................................................... 22

    E.  Neither the Fraudulent Concealment Doctrine Nor the Discovery Rule
         Prevents Dismissal of the Fraudulent Omission Claim as Time-Barred. ............. 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Spear*,
  No. 10-cv-6697, 2011 WL 2516579 (N.D. Ill. June 23, 2011)................................................23

*Abazari v. Rosalind Franklin Univ. of Med. and Sci.*,
  40 N.E.3d 264 (Ill. App. Ct. 2015) ...................................................................................20

*Ace Hardware Corp. v. Landen Hardware, LLC*,
  883 F. Supp. 2d 739 (N.D. Ill. 2012) .................................................................................23

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ..............................................................................................8

*Artista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)................................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................. *passim*

*Avon Hardware Co. v. Ace Hardware Corp.*,
  998 N.E.2d 1281 (Ill. App. Ct. 2013) .................................................................................23

*Barrington Press, Inc. v. Morey*,
  752 F.2d 307 (7th Cir. 1985) ..............................................................................................20

*Bourke v. Dun & Bradstreet Corp.*,
  159 F.3d 1032 (7th Cir. 1998) ............................................................................................13

*Brown v. Budz*,
  398 F.3d 904 (7th Cir. 2005) ..............................................................................................19

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1990) ..............................................................................................6

*Camico Mut. Ins. Co. v. Citizens Bank*,
  474 F.3d 989 (7th Cir. 2007) ..............................................................................................13

*Candell v. Shiftgig Bullpen Temp. Emp. Agency*,
  No. 17 C 3620, 2019 WL 2173797 (N.D. Ill. May 20, 2019) .................................................11

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) .................................................................................12, 13, 16

*Chang v. McDonald's Corp.*,
  No. 95-16012, 1996 WL 742455 (9th Cir. Dec. 19, 1996)................................................12, 15

*Cohen v. Am. Sec. Ins. Co.*,
735 F.3d 601 (7th Cir. 2013) ...................................................................22

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009 (2020)....................................................................9, 10

*Commonwealth Edison Co. v. Elston Ave. Prop., LLC*,
76 N.E. 3d 761 (Ill. App. Ct. 2017) ...................................................13

*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*,
250 F.3d 570 (7th Cir. 2001) ...............................................................23

*Cromeens, Holloman, Silbert, Inc. v. AB Volvo*,
349 F.3d 376 (7th Cir. 2003) ...............................................................15

*Daniels v. Fed. Reserve Bank of Chi.*,
No. 98 C 1186, 2004 WL 419796 (N.D. Ill. Mar. 4, 2004) ....................5

*Fischer v. Caterpillar, Inc.*,
No. 11 C 1665, 2012 WL 851550 (N.D. Ill. Mar. 13, 2012) ...................4

*Guarantee Tr. Life Ins. Co. v. Kribbs*,
68 N.E.3d 1046 (Ill. App. Ct. 2016) ...............................................24, 25

*Hengel Inc. v. Hot N' Now, Inc.*,
825 F. Supp. 1311 (N.D. Ill. 1993) .....................................................20

*Hermitage Corp. v. Contractors Adjustment Co.*,
651 N.E.2d 1132 (Ill. 1995)..................................................................25

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989).....................................................................20

*Iron Workers St. Louis Dist. Council Pension Fund v. Zenith Am. Sols., Inc.*,
No. 13 C 7867, 2014 WL 3563295 (N.D. Ill. July 17, 2014) .................16

*Juniel v. Park Forest-Chicago Heights Sch. Dist. 163*,
161 F. Supp. 2d 910 (N.D. Ill. 2001), *aff'd*, 46 F. App'x 853 (7th Cir. 2002) ........................6

*LaSalle Bank Nat'l Assoc. v. Paramont Props.*,
588 F. Supp. 2d 840 (N.D. Ill. 2008) ..................................................14

*Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*,
946 F. Supp. 1358 (N.D. Ill. 1996) .....................................................21

*Lemon v. Myers Bigel, P.A.*,
No. 19-1380, 2021 WL 161978 (4th Cir. Jan. 19, 2021).......................10

*Lentini v. McDonald's*,
No. 19-4596, 2019 WL 4746420 (D.N.J. Sept. 30, 2019) ....................................................12

*Limestone Dev. Corp. v. Vill. of Lemont*,
520 F.3d 797 (7th Cir. 2008) .......................................................................................................4

*Logan v. Wilkins*,
644 F.3d 577 (7th Cir. 2011) ...................................................................................3, 16, 17

*In re marchFIRST, Inc.*,
589 F.3d 901 (7th Cir. 2009) ....................................................................................................17

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) .......................................................................................................7

*McDonald's Corp. v. C.B. Mgmt. Co.*,
13 F. Supp. 2d 705 (N.D. Ill. 1998) .........................................................................................15

*McMahan v. Deutsche Bank AG*,
938 F. Supp. 2d 795 (N.D. Ill. 2013) .......................................................................................19

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) .................................................................................................7, 8

*Medscript Pharm., LLC v. My Script LLC*,
77 F. Supp. 3d 788 (N.D. Ill. 2015) .........................................................................................20

*Nat'l Ass'n of African Am.-Owned Media, et al. v. Charter Commc'ns, Inc., et al.*,
No. 2:16-cv-00609-GW-FFM (C.D. Cal. Aug. 20, 2020) ......................................................10

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002).................................................................................................................4, 5

*Ocean Tomo, LLC v. PatentRatings, LLC*,
375 F. Supp. 3d 915 (N.D. Ill. 2019) .......................................................................................22

*Payne v. Abbott Labs.*,
999 F. Supp. 1145 (N.D. Ill. 1998) .............................................................................................3

*Payne v. McDonald's Corp.*,
957 F. Supp. 749 (D. Md. 1997)...............................................................................................15

*Pillows v. Cook Cty. Recorder of Deeds Office*,
No. 18 C 7497, 2019 WL 2524149 (N.D. Ill. June 18, 2019) ..................................................9

*Putzier v. Ace Hardware Corp.*,
50 F. Supp. 3d 964 (N.D. Ill. 2014) ...........................................................................16, 19, 24

*Rivas v. Levy*,
No. 11 C 02738, 2015 WL 718271 (N.D. Ill. Feb. 18, 2015)...........................................3, 25

*Rocha v. Rudd*,
826 F.3d 905 (7th Cir. 2016) ...............................................................................................19

*Rubert v. King*,
No. 19-CV-2781 (KMK), 2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020) ...........................10

*Sevugan v. Direct Energy Servs., LLC*,
931 F.3d 610 (7th Cir. 2019) ...................................................................................11, 16

*Siemer v. Quizno's Franchise Co. LLC*,
No. 07 C 2170, 2008 WL 904874 (N.D. Ill. 2008)...........................................................18, 23

*Simonian v. Weber-Stephen Prods. Co.*,
272 F.R.D. 218 (N.D. Ill. 2011).............................................................................................20

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) .....................................................................................8, 9, 10, 11

*TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*,
491 F.3d 625 (7th Cir. 2007) ...............................................................................................12

*Tinner v. United Ins. Co. of Am.*,
308 F.3d 697 (7th Cir. 2002) ...............................................................................................4

*Venzor v. Gonzalez*,
936 F. Supp. 445 (N.D. Ill. 1996) ......................................................................................20

*Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*,
316 F.3d 641 (7th Cir. 2002) ...............................................................................................23

*Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*,
No. 18-CV-05162, 2020 WL 1503652 (N.D. Ill. Mar. 29, 2020).........................................8

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ...............................................................................................18

*Wilbern v. Culver Franchising Sys., Inc.*,
No. 13 C 3269, 2015 WL 5722825 (N.D. Ill. Sept. 29, 2015).................................................6

## Statutes and Rules

42 U.S.C. § 1981 ...................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ...............................................................................................18, 19, 20, 25

Even after amending their complaint in the wake of McDonald's first motion to dismiss, Plaintiffs' Amended Complaint contains the same fatal flaws found in their original complaint. Tellingly, in their opposition brief, Plaintiffs gloss over the glaring absence of specific factual allegations supporting any Plaintiff's claims. In lieu of facts, Plaintiffs double-down on inflammatory rhetoric, bald accusations, and unadorned speculation. They recklessly and falsely accuse McDonald's of "racism," "redlining," and "sharecropping," incendiary terms designed to evoke feelings of anger, grief, and despair given the historic experiences of Black people in this country. But with nothing more than vague (and untrue) conjecture about discriminatory "policies," improper inferences from cherry-picked data, and mischaracterization of a 25-year-old letter, Plaintiffs' attempts fail to state a viable cause of action. Plaintiffs offer virtually no factual allegations about their franchise relationship with McDonald's, including the locations of their individual restaurants, financial circumstances, operating conditions, inspections, renewals, interactions with regional managers, and conditions upon which they left the McDonald's franchise.

Moreover, notwithstanding Plaintiffs' protests, the gravamen of the complaint—that against McDonald's obvious economic interest in successful, profitable restaurants and franchisees, as well as protecting its well-known and valuable brand, the Company intentionally discriminated against Black owner-operators, nationwide and for decades, so that they would fail—remains fundamentally implausible and extraordinary. There is no factual support for the assertion that Black franchisees were limited to undesirable locations rejected by White franchisees. Indeed, that theory is contradicted by Plaintiffs' own allegation that McDonald's re-sold Plaintiffs' restaurants to White owner-operators (*See* Amended Complaint (Dkt. 30) ("AC") ¶ 189.)

It is also evident from the face of the Amended Complaint that Plaintiffs seek to assert their § 1981 claims based on events that occurred long before the beginning of the applicable two-year and four-year limitations period. All such claims should be dismissed as untimely. Plaintiffs' attempts to evade the applicable statutes of limitations through the "continuing violation" doctrine, fraudulent concealment, and the discovery rule are meritless. Indeed, Plaintiffs' primary evidence against McDonald's is a *25-year-old* letter, so they have no excuse for not bringing their claims earlier.

Plaintiffs' remaining claims, for breach of contract and fraudulent omission, should also be dismissed. Plaintiffs' contract claims rest on an obvious misreading of the terms of their franchise agreements with McDonald's, and their opposition brief merely confirms as much. Similarly, Plaintiffs' fraudulent omission claim continues to suffer from multiple fatal defects, including failing to: allege a duty to disclose, plead the claim with particularity, allege that they could not have discovered the supposedly omitted information through a reasonable inquiry, and establish reasonable reliance or an intent by McDonald's to induce a false belief. Plaintiffs' opposition does nothing to resolve these defects. Moreover, like their discrimination claims, Plaintiffs' contract and fraud claims are largely time-barred.

In sum, Plaintiffs fail to address the fatal flaws of their Amended Complaint and dismissal with prejudice is warranted.

## ARGUMENT

## I. PLAINTIFFS' § 1981 CLAIMS ARE LARGELY TIME-BARRED AND INSUFFICIENTLY PLED.

Plaintiffs' own arguments demonstrate that their § 1981 claims are either time-barred or insufficiently pled, or both.

### A.   Most of Plaintiffs' § 1981 Claims Are Time-Barred.

Plaintiffs do not dispute that their § 1981 claims have a two-year statute of limitations for pre-contractual activity and a four-year statute of limitations for alleged unfair treatment during the terms of their Franchise Agreements ("FAs").  Instead, Plaintiffs argue—incorrectly—that the statute of limitations cannot be resolved on a motion to dismiss.  (Plaintiffs' Opp. to Defendants' Motion to Dismiss (Dkt. 44) ("Opp.") at 7–8.)  It is well established that it is appropriate to dismiss a claim at the pleadings stage when the face of the complaint makes clear that the claims are time-barred.  *See Rivas v. Levy*, No. 11 C 02738, 2015 WL 718271, at *4 (N.D. Ill. Feb. 18, 2015) (citing *Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011)).  That is precisely the case here.  As plaintiffs themselves admit, a "discrimination claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action, which is generally the date of the last discriminatory act."  (Opp. at 10.)  Plaintiffs do not dispute—and cannot dispute—that the Amended Complaint is based primarily on alleged acts of discrimination that occurred long before the limitations period—in some instances, decades in the past.  Their professed ignorance of these acts, and inability to discover these acts, prior to their exit from the McDonald's franchise system is contradicted by their own allegations and common sense.

In particular, Plaintiffs try to avoid the statute of limitations by arguing that there is a "continuing violation" or, alternatively, that fraudulent concealment or the discovery rule should delay the running of the statute of limitations.  (Opp. at 9–15.)  None of these legal theories has any factual basis in the Amended Complaint.  *See, e.g.*, *Payne v. Abbott Labs.*, 999 F. Supp. 1145, 1150 (N.D. Ill. 1998) ("If the factual allegations of a complaint are insufficient to form the basis of tolling the statute of limitations based on the continuing violation doctrine, courts routinely dismiss plaintiff's complaint as untimely.").

The "continuing violation" doctrine does not apply here, where the conduct at issue is a series of discrete acts. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that that this doctrine does not apply to "discrete discriminatory acts." *Id.* at 113. That is because "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each is "separate[ly] actionable." *Id.* at 114. This is distinguishable from claims relating to acts that are not actionable individually but together form a claim. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008).

Plaintiffs' § 1981 claims are based on discrete acts such as placing Plaintiffs in "poor-performing and dangerous locations," requiring them to undertake unnecessary "rebuilds," and giving them unwarranted bad grades after restaurant inspections. (AC ¶ 226.) Such acts, by their nature, cause harm that is immediately recognizable and cannot therefore constitute a continuing violation. *See, e.g.*, *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 700–01, 708–09 (7th Cir. 2002) (holding that transfer to a predominately African-American area, a conflict with a White office administrator, allegedly discriminatory application of the company's dress code, denial of vacation, and termination were all discrete acts, not a continuing violation); *see also Fischer v. Caterpillar, Inc.*, No. 11 C 1665, 2012 WL 851550, at *3 (N.D. Ill. Mar. 13, 2012) (finding continuing violation doctrine inapplicable to § 1981 claims where "[t]he conduct alleged by [plaintiff] in this case involves discrete acts, such as when [plaintiff] was allegedly told that she would not be eligible to work overtime and when she was denied the opportunity to bid on other jobs.").

Nor can Plaintiffs invoke the continuing-violation doctrine by pleading vague theories about McDonald's supposed "discriminatory practices and policies." (AC ¶ 161.) *Morgan* forecloses the use of "pattern and practice" allegations to toll claims arising from discrete acts like

the ones alleged here. *See* 536 U.S. at 111–12. But even if a "pattern and practice" theory was available, the "ongoing pattern must be shown through [plaintiffs'] *individual claims of discrimination*, not through other employees' claims and not through a general pattern or practice." *Daniels v. Fed. Reserve Bank of Chi.*, No. 98 C 1186, 2004 WL 419796, at *6 (N.D. Ill. Mar. 4, 2004) (emphasis added). Thus, in *Daniels*, the court rejected the plaintiffs' argument "that a continuing violation is demonstrated by each of [p]laintiffs' allegations that the [defendant] had a long-held 'pattern and practice' of racial discrimination against African-Americans and that the [defendant's] alleged discriminatory acts were similar, repetitive, and continuous." *Id.* Similarly, Plaintiffs' conclusory allegations of a pattern or practice, which lack any individualized support, do not toll the applicable statute of limitations.

Plaintiffs' alternative theory—that fraudulent concealment or the discovery rule should delay the running of the statute of limitations—is equally without merit. As McDonald's explained in its opening brief, nothing in the Amended Complaint suggests that it affirmatively concealed any misconduct; to the contrary, Plaintiffs themselves allege that McDonald's was subject to public complaints of discrimination during the time-period in question. (McDonald's Mem. in Supp. of Mot. to Dismiss (Dkt. 39) ("Mot.") at 11–12.) Indeed, in their opposition, Plaintiffs rely heavily on a 1996 letter to the National Black McDonald's Operators Association ("NBMOA")— a 47-year-old organization dedicated to ensuring that Black franchisees are protected and represented within McDonald's—as evidence of discrimination by McDonald's. (Opp. at 15–16.) Not only is this letter not evidence of discrimination (*see infra* at 7), but it indeed makes clear that Plaintiffs could have pled their claim 25 years ago. Plaintiffs offer no substantial argument to the contrary.

5

Similarly, the discovery rule does not apply. It merely "postpones the beginning of the limitations period from the date when the plaintiff is wronged *to the date when he discovers he has been injured* . . . ." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (emphasis added). Put differently, a "plaintiff's claim accrues when he discovers that he has been *injured*, not when he determines that the injury was *unlawful*." *Juniel v. Park Forest-Chicago Heights Sch. Dist. 163*, 161 F. Supp. 2d 910, 914 (N.D. Ill. 2001) (emphasis supplied), *aff'd*, 46 F. App'x 853 (7th Cir. 2002). Here, Plaintiffs were necessarily aware of their purported injury at the time the acts in question occurred because they claim that McDonald's actions (frequent inspections and unreasonable grading, mandatory rebuilds, denial of financial assistance and rewrite) were not justified by the circumstances at the time. (*See, e.g.*, AC ¶¶ 188, 203–04, 208–09.) Plaintiffs' reliance on *Wilbern v. Culver Franchising Sys., Inc.*, No. 13 C 3269, 2015 WL 5722825 (N.D. Ill. Sept. 29, 2015) is misplaced. There, the defendant claimed to have rejected the plaintiff's application for a franchise opportunity in 2009, but never actually informed the plaintiff of that decision, who had no reason to know of it until the defendant terminated his existing franchise. *Id.* at *21–22. The court sensibly concluded that the plaintiff's claim accrued when he learned of the denial and thereby discovered his injury. *See id.* Here, Plaintiffs are not claiming that McDonald's failed to promptly notify them of any of the decisions that underlie their claim, so *Wilburn* is inapposite.

Overall, the face of the Amended Complaint makes clear that most of Plaintiffs' § 1981 claims are time-barred and should be dismissed.

### B. Plaintiffs Fail to Plausibly Allege Intent to Discriminate.

To the extent Plaintiffs' § 1981 claims are not time-barred, dismissal is appropriate because they are insufficiently pled. Plaintiffs offer no real response to McDonald's argument that intent to discriminate is a key element of the claim and the Amended Complaint contains no concrete

factual allegations supporting such intent.  (Mot. at 12–16.)  Indeed, Plaintiffs' opposition fails to cite **even one** concrete factual allegation suggesting that any one of the Plaintiffs—much less all of them—was subject to intentional discrimination.  (*See* Opp. at 15–18.)

Although Plaintiffs continue to argue that the 1996 letter sent to the NBMOA is an admission of past discrimination (Opp. at 15–16), it plainly cannot serve as evidence of intent for the 25 years since the letter was sent.  Plaintiffs' vague references to eleven "categories of ongoing practices" that McDonald's supposedly applied in a discriminatory manner (*see* Opp. at 17) are also inadequate to substitute for concrete "factual content."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Supreme Court has made clear that broad allegations of a program to discriminate are insufficient; Plaintiffs are required to introduce hard facts making it plausible that there was, in fact, discrimination.  *See id.* at 681–83.  Similarly, in *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012), the Seventh Circuit refused to credit plaintiffs' theory that discriminatory intent underlay a company policy just because the plaintiffs said so.  *See id.* at 885–87.[1]  Here, Plaintiffs plead no facts suggesting that the alleged "ongoing practices" even existed, much less that they were designed with an intent to discriminate.

The pleading deficiencies are particularly stark given the extraordinary theory asserted by Plaintiffs.  As the Seventh Circuit has held, extraordinary theories require extraordinary pleading.  *McCauley v. City of Chi.*, 671 F.3d 611, 616–17 (7th Cir. 2011) ("A more complex case . . . will

---

[1] Plaintiffs seek to distinguish *McReynolds* on the ground that, there, the plaintiffs challenged a "race neutral" policy.  (Opp. at 17.)  This distinction is baseless as Plaintiffs do not identify any McDonald's policy that is not race neutral.  Unsurprisingly, McDonald's has policies regarding the conduct at issue in the Amended Complaint: awarding of new restaurants, "rewrites" for existing restaurants, inspections, and so forth.  (Mot. at 4–5; *see also* FDD, Ex. K (McDonald's Rewrite Policy).)  Plaintiffs do not allege that any of these policies expressly provides that Black owner-operators should be treated worse than other owner-operators, and of course, the policies do not contain any such requirement.  Instead, Plaintiffs allege that McDonald's race-neutral policies were applied in an intentionally discriminatory manner.  That is indistinguishable from *McReynolds* and *Iqbal*.

require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.") (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)).  While Plaintiffs argue this rule only applies to claims involving "financial derivatives," "tax fraud," or "antitrust" violations" (Opp. at 19), that argument runs counter to judicial authority in the Seventh Circuit and the Northern District of Illinois, where courts have repeatedly applied the rule to complex race discrimination cases.  *See, e.g.*, *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) ("This is a complex discrimination claim, and we have observed that under *Iqbal* and *Twombly*, '[t]he required level of factual specificity rises with the complexity of the claim.'") (citing *McReynolds*, 694 F.3d at 887); *Washington v. Hughes Socol Piers Resnick & Dym, Ltd.*, No. 18-CV-05162, 2020 WL 1503652, at *5 (N.D. Ill. Mar. 29, 2020) ("Because this is not an ordinary discrimination claim, it requires more than the ordinary allegations to put the defendant on notice of what the case entails and to connect the dots in a plausible way.").  As this Court recognized in its recent order staying discovery, it is hard to imagine a § 1981 case more complex than this one: it involves 77 individual plaintiffs (47 of whom assert § 1981 claims) who own "more than 300 restaurants" and seek "more than $1 billion in damages." (Dkt. 45.)

Ultimately, Plaintiffs' theory that McDonald's intentionally sabotaged Black franchisees is against the economic interest of McDonald's and fundamentally implausible.  Plaintiffs concede that McDonald's earns more money when its restaurants earn higher revenues, but in a clear attempt to further a manufactured narrative, now argue that McDonald's "had an incentive to place Black franchisees in predominantly Black neighborhoods to target the Black consumers who live there, where White franchisees refused to operate." (Opp. at 16.)  This latest theory is not only unsupported by factual allegations, but also contradicted by the Amended Complaint itself, which

asserts that McDonald's routinely resold Plaintiffs' restaurants to White franchisees. (AC ¶ 189.) Nor does this theory offer any explanation for why McDonald's would try to "force out" Black franchisees through unfair inspections and the various other practices alleged in the Amended Complaint—if McDonald's, as Plaintiffs allege, wanted to keep Black owner-operators in Black neighborhoods. In sum, Plaintiffs offer no cogent, fact-based theory for why McDonald's would intentionally engage in the conduct alleged in the Amended Complaint.

> **C.     Plaintiffs Fail to Plead "But-For" Causation.**

Dismissal is also appropriate because Plaintiffs do not allege any facts supporting a plausible inference that race was a "but-for" cause of their alleged injuries. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Pillows v. Cook Cty. Recorder of Deeds Office*, No. 18 C 7497, 2019 WL 2524149, at *3 (N.D. Ill. June 18, 2019). As the Supreme Court has recently held, such causation must be supported at the pleading stage by concrete factual content under the *Iqbal* standard. *See Comcast*, 140 S. Ct. at 1014, 1019 ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end"; remanding for an evaluation of the requisite but-for causation allegations under *Iqbal*).

In their opposition brief, Plaintiffs identify no such factual content. Instead, they argue that they are not required to plead factual content showing but-for causation, relying primarily on the Seventh Circuit's decision in *Swanson*, 614 F.3d at 405. (Opp. at 18–21.) Plaintiffs argue that a § 1981 plaintiff need only allege "the type of discrimination that she thinks occurs (racial), by whom . . . , and when." (Opp. at 20, citing *Swanson*, 614 F.3d at 405). This argument fails for multiple reasons.

First, Plaintiffs cannot overcome *Swanson*'s express proviso that, in "complex" cases, more factual detail is required. 614 F.3d at 405. As explained above, Plaintiffs are not even close to

pleading the level of factual detail required to state a complex discrimination claim. Plaintiffs rely on a single, unpublished, out-of-circuit decision reading *Swanson* for the proposition that discrimination cases are not "complex" cases. (*See* Opp. at 18–20 (citing *Nat'l Ass'n of African Am.-Owned Media, et al. v. Charter Commc'ns, Inc., et al.*, No. 2:16-cv-00609-GW-FFM (C.D. Cal. Aug. 20, 2020)).) That decision is out of step with decisions in this Circuit, which have interpreted *Swanson* to require more factual content in "complex" discrimination cases. (*See supra* at 7–8.)

Second, Plaintiffs' position is irreconcilable with the Supreme Court's decision in *Comcast*. *Swanson* did not even discuss but-for causation or the requirements of § 1981 (rather, as Plaintiffs concede, it concerned a different statute entirely). To the extent Plaintiffs try to create tension between *Comcast* and *Swanson*, the Supreme Court's more-recent and more-specific decision governs. Indeed, multiple courts since *Comcast* have held § 1981 plaintiffs to their burden of supporting allegations of but-for causation with concrete facts. *See, e.g.*, *Lemon v. Myers Bigel, P.A.*, No. 19-1380, 2021 WL 161978, at *6 (4th Cir. Jan. 19, 2021) (finding that, "in the absence of plausible allegations that, for example, [] white partners were similarly situated," plaintiff's "allegation that she was subject to a different short-term leave application process than the firm's white partners is by itself insufficient" to plead but-for causation under *Comcast*); *Rubert v. King*, No. 19-CV-2781 (KMK), 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020) (finding that "boilerplate assertion[s] unsupported by specific facts" that plaintiff was "fired because defendants saw him as another expendable Hispanic" and that "Walmart has a history of discrimination and illegal conduct" were insufficient to plead but-for causation). This Court should do the same.

Finally, Plaintiffs fail to satisfy the *Swanson* standard which requires allegations, for each Plaintiff and each allegedly discriminatory act, who at McDonald's allegedly committed it, and when it occurred. Nothing in *Swanson* permits Plaintiffs to conjure up a host of discriminatory "policies" based on mere say-so, while failing to allege the basic facts surrounding each discriminatory act at issue.

## II.    PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.

Plaintiffs' Amended Complaint fails to meet the requisite pleading standards for a breach of contract claim, ignores the plain language of the Plaintiffs' contracts with McDonald's, and facially demonstrates that the claim is largely time-barred. (*See* Mot. at 18–26.) Nothing in Plaintiffs' Opposition corrects these fundamental deficiencies. As such, the breach of contract claim should be dismissed.

### A.    Plaintiffs Have Not Pled an Actionable Breach of Any Obligations by McDonald's.

As discussed in McDonald's opening brief, Plaintiffs' breach of contract claim does not focus on any contractual ***obligation*** of McDonald's that was allegedly breached. (Mot. at 20–24.)[2] *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614–15 (7th Cir. 2019). In response, Plaintiffs contend that Section 12 of the FA imposes a "reasonableness" standard on McDonald's, and that Section 3 creates an obligation to provide "additional services" relative to other franchisees. (Opp. at 23–25.) Plaintiffs are wrong on both counts.

---

[2] Plaintiffs also fail to adequately plead their own substantial performance as well as necessary facts establishing when and how the FAs were breached. (Mot. at 24, 25 n.14.) Plaintiffs' failure to address either of these points in their opposition provides an independent basis for dismissal of Count II. *See Candell v. Shiftgig Bullpen Temp. Emp. Agency*, No. 17 C 3620, 2019 WL 2173797, at *3 (N.D. Ill. May 20, 2019) (failure to proffer a substantive response to an argument asserted in a dispositive motion results in forfeiture and is, in itself, a basis to grant the dispositive motion).

1.     **Plaintiffs Admit that Section 12 of the Franchise Agreement Imposes Obligations on Plaintiffs, Not McDonald's.**

Plaintiffs do not dispute that Section 12 of the FA, entitled "Compliance with Entire System," confers obligations on Plaintiffs, not McDonald's. Thus, as a matter of law, McDonald's cannot have breached Section 12. (Mot. at 21–22); *see also TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Only a duty imposed by the terms of a contract can give rise to a breach.").

Recognizing that Section 12 of the FA imposes no obligations on McDonald's, Plaintiffs try to create and impose a reasonableness standard on McDonald's with respect to operations, inspections, and renovations, on the basis of Paragraph 12(c), which states that franchisees "shall comply with the entire McDonald's System," by "[k]eep[ing] the Restaurant constructed and equipped in accordance with the ***building blueprints and equipment layout plans*** that are standard . . . or as such ***blueprints and plans*** may be ***reasonably changed*** from time to time by McDonald's." (FA ¶ 12(c) (emphasis added).) However, by its plain terms, the reasonableness language in Paragraph 12(c) relates only to changes by McDonald's to its "blueprints and equipment layout plans," and Plaintiffs make no claim that McDonald's unreasonably changed these plans during the terms of their franchises.[3]

---

[3] Plaintiffs argue that *Lentini v. McDonald's*, No. 19-4596, 2019 WL 4746420 (D.N.J. Sept. 30, 2019) establishes that the word "reasonably" in Paragraph 12(c) is ambiguous and can be read expansively. (Opp. at 24–25.) However, the *Lentini* court analyzed Paragraph 12(c) consistent with its explicit terms; the issue presented there was whether the changes made by McDonald's to its blueprints and plans were reasonable, and the court held that because "Plaintiffs ha[d] adequately pled the unreasonableness of the changes, the[ir] breach of contract claim" could not be dismissed. *Lentini*, 2019 WL 4746420 at *4. The court said nothing, however, about whether the term "reasonably" in Paragraph 12(c) could be expanded as Plaintiffs argue here. Unlike the plaintiff in *Lentini*, Plaintiffs have not adequately pled "unreasonableness" *see infra*, or that the FA is ambiguous (an issue not raised in their Amended Complaint). *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). And in any event, even the authority cited by Plaintiffs (Opp. at 24 n.6) have held that Section 3 of the FA is clear and unambiguous. *See, e.g.*, *Chang v. McDonald's Corp.*, No. 95-16012, 1996 WL 742455, at *1 (9th Cir. Dec. 19, 1996).

Moreover, Section 12, which must be read as a whole, contains more specific provisions relating to each of the issues that Plaintiffs claim were subject to a reasonableness standard:

–   ***Operations***:  Franchisee shall "[o]perate the Restaurant in a clean, wholesome manner in compliance with prescribed standards of Quality, Service, and Cleanliness . . . ." (FA ¶ 12(a).)

–   ***Inspections***: "McDonald's shall have the right to inspect the Restaurant at all reasonable times to ensure that Franchisee's operation thereof is in compliance with the standards and policies of the McDonald's System."  (*Id.* ¶ 12.)

–   ***Renovations***:  Franchisee shall "[k]eep the Restaurant constructed and equipped in accordance with the building blueprints and equipment layout plans" and "[m]ake repairs or replacements required . . . ."  (*Id.* ¶¶ 12(c), (e).)

Neither provision relating to Plaintiffs' obligations with respect to operations or renovations uses the term "reasonable;" indeed, both state that a franchisee "shall" comply with the requirements contained therein.  Only the opening portion of Section 12 regarding inspections contains the word "reasonable," and it only relates to the ***times*** at which such inspections occur.[4]  In short, Plaintiffs' effort to leverage the use of the word "reasonably" in Paragraph 12(c) into a contract-wide "reasonableness standard" with respect to McDonald's rights regarding franchise operations, inspections, and renovations is unavailing.  *See Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) (courts interpret contracts using the "four corners" rule; the contract "speaks for itself" and the parties' intentions "must be determined by the language used.").[5]

---

[4] As discussed in McDonald's opening brief, Plaintiffs have alleged no facts to establish that their locations were inspected "outside of regular business hours." (Mot. at 22.)  Per Section 12 of the FA, the franchisee is obligated to "[o]perate the Restaurant seven (7) days per week throughout the year and at least during the hours from 7:00 a.m. to 11:00 p.m. . . ." (FA ¶ 12(g).)  There are no facts pled indicating that any Plaintiff was subjected to inspections outside of these times.  And in any event, even if Plaintiffs could establish that McDonald's engaged in "unreasonable" inspections, it would at most provide a basis upon which to refuse such an inspection, and not a material breach of the FA.  *See, e.g., Commonwealth Edison Co. v. Elston Ave. Prop., LLC*, 76 N.E. 3d 761, 767 (Ill. App. Ct. 2017).

[5] To the extent Plaintiffs now assert ambiguity (Opp. at 21–22, 24), the Court should disregard such efforts because Plaintiffs did not raise this issue in their Amended Complaint.  *See Car Carriers*, 745 F.2d at 1107.  And in any event, there is no ambiguity in Section 12 of the FA.  *Bourke v. Dun & Bradstreet Corp.*, 159

### 2. Plaintiffs Ignore the Plain Language of Section 3 of the Franchise Agreement.

Plaintiffs also argue that Section 3 obligated McDonald's to provide various forms of assistance to Plaintiffs as franchisees, even though they concede, as they must, that Section 3 of the FA is properly read to only pertain to "the operation of the Restaurant. . . ."[6] (Opp. at 23–24; *see also* Mot. at 23 n.12; FA ¶ 3.) As discussed in McDonald's opening brief, the FA and Franchise Disclosure Document ("FDD") make clear that McDonald's had no such obligation. (Mot. at 23.) *See LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 856–57 (N.D. Ill. 2008) (dismissing breach of contract claim with prejudice where no provision of the contract required the actions plaintiff alleged were required of defendant). Plaintiffs largely fail to respond to this argument, other than to assert that the phrase "additional services, facilities, rights, and privileges" in Section 3 must create obligations beyond the contract. (Opp. at 23.) This interpretation is strained, inconsistent with the contract when read as a whole, and does not address McDonald's fundamental argument that the "additional" assistance identified by Plaintiffs in their Amended Complaint was explicitly disclaimed by the FDD and the FA. (Mot. at 23.)[7]

Moreover, the assistance that Plaintiffs claim they were denied does not relate to the "operation of the Restaurant" as contemplated by Section 3. Assistance like growth opportunities and the ability to participate in the NextGen program—claims that relate to the ability to own and operate additional *franchises*—are outside the realm of everyday *restaurant* operations, such as

F.3d 1032, 1036 (7th Cir. 1998) (ambiguity is a question of law, and courts should enforce contracts according to their plain terms).

[6] "Restaurant" is defined in each FA to refer to the specific franchise location covered by that Agreement. (FA at 1; *see also* Mot. at 3 (FA "is specific to a particular restaurant and for a limited period").)

[7] Plaintiffs' argument that Section 3 of the FA also applies to how McDonald's imposes rebuild and renovation requirements for a given location (Opp. at 24) is nonsensical. Plaintiffs admit that the FA must be read as a whole (Opp. at 23–24), and Section 12—not Section 3—addresses Plaintiffs' obligations regarding rebuilds and renovations. (*See* FA ¶¶ 12(a), (c), (e).)

food, service, and supplying of equipment.  And, as discussed in McDonald's opening brief (Mot. at 23, n.12), efforts to read Section 3 beyond its plain language regarding restaurant operations have been rejected by other courts, a point which Plaintiffs largely concede.  (Opp. at 23, 24 n.6.)[8]

**B.    Plaintiffs' Conclusory Allegations of "Unreasonableness" Are Insufficient to Support a Viable Breach of Contract Claim.**

Plaintiffs next look to extra-contractual provisions to import a reasonableness standard into the FA.  While they acknowledge that the implied covenant of good faith and fair dealing does not create an independent source of duties for the parties to a contract, they argue that it nevertheless creates a reasonableness standard that must be read into Paragraphs 3 and 12 of the FA.  (Opp. at 25–26.)  As previously discussed (Mot. at 25–26), the implied covenant of good faith and fair dealing is simply an aid in construction and does not override the express terms of the contract. *See Cromeens, Holloman, Silbert, Inc. v. AB Volvo*, 349 F.3d 376, 396 (7th Cir. 2003); *see also C.B. Mgmt.*, 13 F. Supp. 2d at 713 ("McDonald's simply exercised privileges expressly reserved in the agreements and we may not interject the duty of good faith to rewrite the contract.").

Moreover, mere conclusory assertions of unreasonableness are insufficient to adequately plead a breach of contract.  (Mot. at 22, 24–25.)  Rather than addressing this argument, Plaintiffs simply repeat the same conclusory allegations that inspections of their restaurants were "increased,

---

[8] While Plaintiffs seek to distinguish *McDonald's Corp. v. C.B. Mgmt. Co.*, 13 F. Supp. 2d 705 (N.D. Ill. 1998), the holding of that case is directly on point.  There, the franchisee asserted that Section 3 of the FA conferred discretion upon McDonald's to provide it financial assistance and defer termination, and because it had done so in the past with other franchisees, "McDonald's failure to exercise that discretion in good faith constituted a breach of the franchise agreements." *Id.* at 712.  The court dismissed Plaintiffs' claim, finding that Section 3 did not apply, as its terms related only to the "details of restaurant operations such as food, service and the supplying of standardized equipment," not the actions challenged by plaintiff. *Id.* (citation omitted).  The two out-of-circuit cases relied upon by Plaintiffs (Opp. at 24 n.6) are in accordance. *See Chang*, 1996 WL 742455, at *1 ("[plaintiff] takes . . . [Section 3] out of context;" when read as a whole, Section 3 relates only "to the details of restaurant operation, such as food service and the supplying of standardized equipment," not renewal of franchise terms); *Payne v. McDonald's Corp.*, 957 F. Supp. 749, 756 (D. Md. 1997) (Section 3 does not impose obligations on McDonald's to assist franchisee in the sale of a restaurant).

harassing, and targeted" (Opp. at 25; AC ¶ 243(b)) and that McDonald's "unreasonably" required "high-cost" rebuilds or remodels (Opp. at 25; AC ¶ 243(a)). These allegations are not supported by well-pled facts about the circumstances that make McDonald's exercise of its contractual rights unreasonable, and need not be accepted as true. (Mot. at 24.) *See Iqbal*, 556 U.S. at 678; *see also Sevugan*, 931 F.3d at 617 (affirming dismissal of complaint and rejecting plaintiff's argument that defendant "unreasonably exercised its discretion" because the "complaint fail[ed] to allege *how* [defendant] unreasonably exercised its discretion in setting" prices) (emphasis added).

## C. The Amended Complaint Facially Demonstrates that Count II Is Largely Time-Barred.

In response to McDonald's limitations argument, Plaintiffs make the sweeping proposition that the breach of contract claim is timely alleged because "Plaintiffs allege facts to support ***each*** alleged breach and proximity to their exit dates on or before 2010." (Opp. at 5 (emphasis added).) But Plaintiffs do not identify a single factual allegation in support of this argument, nor is it supported by the allegations in the Amended Complaint. (*See* Mot. at 19–20.)

Plaintiffs' attempt to invoke the fraudulent concealment statute to evade the statute of limitations (Opp. at 22) is similarly meritless. Plaintiffs cannot assert "bare allegations of fraudulent concealment, without more, [to] save the[ir] claim." *Logan*, 644 F.3d at 587.[9] Nor can Plaintiffs use their Opposition to invoke the fraudulent concealment statute when the Amended Complaint is silent on that issue regarding Count II.[10] *See Car Carriers, Inc.*, 745 F.2d at 1107.

---

[9] In any event, Plaintiffs' allegations do not meet the requisite standard for invoking the fraudulent concealment doctrine and should be disregarded. *See Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 978 (N.D. Ill. 2014) (fraudulent concealment doctrine inapplicable where plaintiffs did not allege "affirmative acts" by franchisor to "conceal *the cause of action*" and instead asserted vague allegations of "misleading" and "manipulated" information provided by franchisor) (emphasis added).

[10] Plaintiffs' reliance on *Iron Workers St. Louis Dist. Council Pension Fund v. Zenith Am. Sols., Inc.*, No. 13 C 7867, 2014 WL 3563295 (N.D. Ill. July 17, 2014) is misplaced because, unlike the complaint in *Iron Workers*, the Amended Complaint here offers facts that demonstrate the breaches occurred well before the

Plaintiffs' argument that their breach of contract claim cannot be dismissed at the pleading stage because the statute of limitations is an affirmative defense (Opp. at 22–23) is also incorrect, as reflected by Seventh Circuit precedent. *See In re marchFIRST, Inc.*, 589 F.3d at 905 (affirming dismissal at pleading stage where complaint alleged triggering facts *before* the applicable statute of limitations); *Logan*, 644 F.3d at 582 (affirming dismissal where complaint revealed that relief was barred by the applicable statute of limitations and rejecting plaintiff's "bare allegations of fraudulent concealment"). Despite Plaintiffs' narrow view of the supposed breaches that occurred in "proximity to their *exit* dates," (Opp. at 5 (emphasis added)), it is facially obvious that the allegations here relate to McDonald's enforcement of its contractual rights in the 1990s and early 2000s, well before the start of the limitations period in 2010. (Mot. at 20.)[11] Therefore, any portions of Count II that took place prior to June 8, 2010 should be dismissed as untimely.

## III. THE FRAUDULENT OMISSION CLAIM FAILS AS A MATTER OF LAW.

In response to McDonald's initial motion to dismiss, Plaintiffs repackaged their fraudulent misrepresentation claim into a claim of fraudulent omission in the Amended Complaint. (Mot. at 26.) Yet in their opposition, Plaintiffs revert to their misrepresentation theory, arguing, for example, that they have pled their fraud claim by alleging "a scheme to defraud Plaintiffs through a false promise of 'parity' with White franchisees,"[12] McDonald's "use of misleading information," and "misl[eading] Plaintiffs using . . . corporate and public statements of racial equality." (Opp. at 5.) This claim of misrepresentation is simply not the claim pled in the

---

start of the statute of limitations. (Mot. at 19–20.) *See also In re marchFIRST, Inc.*, 589 F.3d 901, 905 (7th Cir. 2009).

[11] Despite invoking the fraudulent concealment statute, Plaintiffs do not identify when their breach of contract claims supposedly began to accrue; they simply allege that any accrual—whenever it would have occurred—was delayed because of the fraudulent concealment statute. (Opp. at 22.) This argument is unsupported by well-pled facts and should be disregarded.

[12] Notably, "parity" is not mentioned in the Amended Complaint in the context of the omission claim.

Amended Complaint, where Plaintiffs allege that McDonald's made **omissions** about certain financial and operational information "throughout their franchise terms." (AC ¶ 249.)[13] This is yet another example of Plaintiffs attempting to create facts where there are none. Additionally, Plaintiffs' opposition brief cannot cure their failure to allege the basic elements of a fraudulent omission claim. In particular, Plaintiffs do not even address their failure to plead the duty to disclose element. (*See* Mot. at 28–30.) Nor do Plaintiffs seriously address their inability to satisfy the pleading requirements of Rule 9(b), or the fact that the claim is time-barred. For all of these independent reasons, Count III should be dismissed with prejudice.

### A. Plaintiffs Do Not Plead a Duty to Disclose in the Amended Complaint, nor Address the Required Element in Their Opposition Brief.

Other than a one sentence acknowledgement of the duty to disclose, Plaintiffs do not address their failure to plead this required element of a fraudulent omission claim. (*See* Opp. at 26.) Plaintiffs' lack of a substantive response is fatal to their claim and the Court need not proceed any further for purposes of dismissing the fraudulent omission claim. (Mot. at 28–30); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (affirming dismissal of fraudulent concealment claim for failing to establish that the defendant was under a duty to disclose the omitted information to the plaintiff); *Siemer v. Quizno's Franchise Co. LLC*, No. 07 C 2170, 2008 WL 904874, at *7 (N.D. Ill. 2008) (dismissing fraudulent omission claim where "no duty to disclose exists" because "[i]t is well established under Illinois law that parties to a contract, including franchise contracts, do not owe a fiduciary duty to one another").

---

[13] Even if the operative complaint included a misrepresentation claim (it does not), as explained in McDonald's first motion to dismiss, Plaintiffs cannot establish such a claim. (*See* Dkt. 25 at 25–32.)

**B.      Plaintiffs Fail to Plead Material Omissions with Particularity Under Rule 9(b).**

Plaintiffs also do not dispute that they must plead the "who, what, when, where, and how" required under Rule 9(b) for their fraudulent omission claim.  (*See* Mot. at 30–32); *see also Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016).  Instead, they cite to a string of cases addressing the sufficiency of "information and belief" allegations.  (*See* Opp. at 31–32.)  However, this fails to address McDonald's argument that there are ***zero*** allegations—based upon information and belief or otherwise—in the Amended Complaint that describe any of the purported omissions with the specificity required under Rule 9(b), or even the general pleading standard under *Iqbal*.

The Seventh Circuit and Northern District of Illinois have clearly set forth what is required under Rule 9(b) for fraudulent omission claims, *see, e.g.*, *Rocha*, 826 F.3d at 911 ("[Plaintiff] fails to provide the specific names, dates, times or content of the . . . omissions that give rise to the alleged fraud."), including in franchise cases, *see Putzier*, 50 F. Supp. 3d at 985–86 ("Even when a plaintiff has limited information, the court still expects him to attempt to describe the who, what, when, where, and how of the fraud.") (internal quotations omitted).  Plaintiffs' failure to plead any detail regarding the alleged omissions, including basic information such as dates, locations, McDonald's representatives involved, the Plaintiffs involved, form, and content, requires dismissal of Count III.  *See McMahan v. Deutsche Bank AG,* 938 F. Supp. 2d 795, 805–06 (N.D. Ill. 2013) (dismissing fraudulent concealment claim because "[p]laintiffs must provide greater detail about the circumstances surrounding the omissions, including when and where they occurred, and what material facts should have been disclosed at what times").[14]

---

[14] Plaintiffs' case law regarding "information and belief" allegations have no substantive bearing on this case. None of the cases involve fraudulent omission (some do not even involve fraud), and all simply stand for the unremarkable proposition that, under certain circumstances, a plaintiff may plead allegations based on information and belief. *See Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005) (due process and equal protection); *Artista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (copyright infringement);

Last, Plaintiffs admit that under Illinois law, omissions relating to future events or financial projections cannot support a fraud claim. (Opp. at 28; Mot. at 32.) Nevertheless, they assert that their allegations fall into an exception to this rule regarding promises of "future conduct." (Opp. at 28). However, this exception only applies to promises of future, tangible conduct, not to "predictions or opinions regarding future business performance," such as those alleged here. *Barrington Press, Inc. v. Morey*, 752 F.2d 307, 310 n.1 (7th Cir. 1985). Moreover, both cases cited by Plaintiffs for this point refer to exceptions based on fraudulent ***misrepresentations*** regarding future conduct, not fraudulent ***omissions***, which is the basis for Plaintiffs' Count III. *See Hengel Inc. v. Hot N' Now, Inc.*, 825 F. Supp. 1311, 1322–32 (N.D. Ill. 1993); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). And in any event, even if the alleged omissions fell within this exception, such a claim is nevertheless subject to the requirements of Rule 9(b) and must be pled with specificity. *See Hengel,* 825 F. Supp. at 1321; *see also Venzor v. Gonzalez*, 936 F. Supp. 445, 453 n.4 (N.D. Ill. 1996) (claims relating to promises of future conduct may be asserted as "promissory fraud," but are "tempered by pleading . . . hurdles" and require "specific, objective manifestations of fraudulent intent"). Because Plaintiffs have failed to plead material omissions with the particularity required under Rule 9(b), Count III must be dismissed. *See Abazari v. Rosalind Franklin Univ. of Med. and Sci.,* 40 N.E.3d 264, 274 (Ill. App. Ct. 2015) (dismissing fraudulent concealment claim because "the mere failure to disclose factors that could influence [financial data] in the future cannot support" such claim).

---

*Medscript Pharm., LLC v. My Script LLC,* 77 F. Supp. 3d 788 (N.D. Ill. 2015) (tortious interference, unfair competition, unjust enrichment, conversion, and various statutory claims); *Simonian v. Weber-Stephen Prods. Co.*, 272 F.R.D. 218 (N.D. Ill. 2011) (false marketing). These cases are not only inapplicable, but are also irrelevant since Plaintiffs have not pled information and belief allegations for the eight supposed omissions. (*See* AC ¶ 249.) In fact, there is only *one* "information and belief" allegation in the entire Amended Complaint, and it is not about an omission McDonald's allegedly withheld. (*See id.* at ¶ 175.)

**C.      Plaintiffs Cannot Establish that They Could Not Have Learned the Truth About the Alleged Omissions with Reasonable Inquiry.**

Other than a single sentence (Opp. at 32), Plaintiffs do not address McDonald's argument that they failed to plead they could not have discovered the truth about the omissions through reasonable investigation.  (Mot. at 34–35.)[15]  However, this sentence only addresses two of the omissions alleged by Plaintiffs in the Amended Complaint (franchise location and rebuild/renovation requirements), but not the other six alleged omissions.  (*Id.* at 35; *see also* AC ¶ 249(b), (d), (e), (f), (g), (h).)

More significantly, Plaintiffs have not addressed McDonald's argument that the documents and disclosures provided to Plaintiffs before they agreed to become franchisees directly addressed each of the alleged omissions.  (Mot. at 32–34.)  In fact, Plaintiffs admit that the "FA and FDD have information relating to franchise locations, fees, and renewal requirements."  (Opp. at 32.)  As the FA and FDD contained information about the exact issues Plaintiffs now claim were fraudulently omitted, Plaintiffs were put on notice of these issues, signed contractual documents confirming their understanding of the same, and, therefore, cannot establish that they were unable to investigate or inquire into those issues.  *See Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1367 (N.D. Ill. 1996) (dismissing fraudulent omission claim where the "complaint contains no allegations indicating that [plaintiff] took any steps to make a reasonable inquiry about [the omissions], or that [defendant] prevented it from making such an inquiry").

_____

[15] Plaintiffs allege that McDonald's "concealed information that would have revealed a pattern and practice common to all Black franchisees."  (Opp. at 26.)  However, the fraudulent omission claim is not based on a discriminatory scheme; it is based on McDonald's alleged concealment of certain information regarding franchise locations, financial performance, rebuild and remodel obligations, growth opportunities, renewals, inspections, and buyer qualifications from each of the Plaintiffs named in Count III.  (*See* AC ¶ 249.)  Plaintiffs cannot conflate their discrimination claim with their fraudulent omission claim to avoid pleading the necessary elements for fraudulent omission, including that they could not have discovered the truth about the specific omissions, a required element Plaintiffs ignore until the last sentence of their opposition brief.

### D. Given the Explicit Disclosures in the FA and FDD, Plaintiffs Cannot Establish Reasonable Reliance or McDonald's Intent to Induce a False Belief.

The opposition also misses the mark when it comes to the two reliance elements required for a fraudulent omission claim: intent to induce reliance and reasonable reliance. (Mot. at 32–34); *see also Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601, 613 (7th Cir. 2013). Plaintiffs' narrow focus on the difference between integration and non-reliance provisions (Opp. at 29–31) prevents them from addressing the larger issue raised by McDonald's; namely, that the terms of the FA and FDD agreed to by Plaintiffs explicitly undermine any supposed reliance or intention to induce reliance on the eight omissions alleged in the Amended Complaint.

First, McDonald's cited to numerous disclosures in the FA and FDD that relate to the subject matter of the alleged omissions, and McDonald's disclaimer of any representations to the contrary. (Mot. at 4, 33–34.) However, Plaintiffs' entire brief focuses on only one provision, Section 26 of the FA, which is an integration provision. (Opp. at 29–31.) Plaintiffs fail, however, to address the numerous other provisions referred to in McDonald's motion, including ¶¶ 28(a), (c) and (i) of the FA, which explicitly provide that McDonald's made no representations regarding "the future profitability of the" franchise, "no promise or representation as to the renewal of" the franchise "or the grant of a new franchise," or any representations that were "not embodied [in the FA] or set forth in the [FDD]." The FA further provides that the franchisee "has had ample opportunity to contact existing franchisees . . . and to investigate all representations made by McDonald's relating to the McDonald's System." (*Id.* ¶ 28(d).) "If the contract's express terms address the claim at issue, not even a fraudulent inducement theory permits the Court to look past the contract's express terms." *Ocean Tomo, LLC v. PatentRatings, LLC*, 375 F. Supp. 3d 915, 930 (N.D. Ill. 2019). That is precisely the case here, where the provisions in the FA and FDD explicitly address each of the omissions alleged by Plaintiffs, and Plaintiffs agreed in writing that

McDonald's made no other representations. (*See* FA ¶ 28); *see also Siemer*, 2008 WL 904874, at *8 (dismissing fraudulent omission claim where contractual provisions stated that franchisees were aware of risks of investing, had been provided with the franchise disclosure documents, and that there were no representations made other than as provided therein).[16]

Second, Plaintiffs ignore the fact that McDonald's is a franchisor and, thus, its disclosure obligations are governed by the FTC Franchise Rule. (Mot. at 4, 29–30, 33–34.) Plaintiffs make no allegation that McDonald's failed to comply with its obligations under the Franchise Rule, nor that its disclosures in the FDD were false or misleading. The Northern District of Illinois has consistently held that when a franchisor fully complies with its disclosure obligations under the Franchise Rule, a franchisee cannot claim that information was fraudulently omitted or that it reasonably relied on such omissions. *See, e.g., Ace Hardware Corp. v. Landen Hardware, LLC*, 883 F. Supp. 2d 739, 751–52 (N.D. Ill. 2012) (no reasonable reliance as a matter of law where franchise documents disclosed risk of operating a franchise, including that franchisor made no representations about financial success); *7-Eleven, Inc. v. Spear*, No. 10-cv-6697, 2011 WL 2516579, at *7 (N.D. Ill. June 23, 2011) (dismissing fraudulent omission claim where franchisees did "not allege that any of the [franchisor's] disclosures . . . were inaccurate"); *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1289 (Ill. App. Ct. 2013) (same).

---

[16] Plaintiffs rely upon *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641 (7th Cir. 2002) to argue that the presence of an integration clause does not bar a fraud claim. However, the contract at issue there did not contain disclaimer provisions such as are present here. In any event, the Seventh Circuit held that even in the absence of a non-reliance clause, there could be no reasonable reliance because the plaintiff was aware of the information it claimed was withheld and could not "close[] his eyes to a known or obvious risk." *Id.* at 645; *see also Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (same). Such is the case here.

**E.** **Neither the Fraudulent Concealment Doctrine Nor the Discovery Rule Prevents Dismissal of the Fraudulent Omission Claim as Time-Barred.**

Plaintiffs' invocation of the fraudulent concealment doctrine and the discovery rule does not revive their untimely omission claim. Plaintiffs cannot plead fraudulent concealment for multiple reasons. First, Plaintiffs do not allege any affirmative actions by McDonald's to conceal the alleged omissions; to the contrary, all the alleged omissions are directly addressed in the FA and FDD. (*See* Mot. at 32–35); *see also Putzier*, 50 F. Supp. 3d at 978 (rejecting application of the fraudulent concealment doctrine where "[p]laintiffs fail to allege any affirmative acts by [franchisor] that were calculated to conceal the cause of action" and "[i]nstead, Plaintiffs make vague allegations that [franchisor] provided misleading averages, manipulated sales projections, and concealed and suppressed accurate data"); *see also Guarantee Tr. Life Ins. Co. v. Kribbs,* 68 N.E.3d 1046, 1056 (Ill. App. Ct. 2016) (fraudulent concealment doctrine did not apply where "allegations are unsupported by details regarding any specific false statements made by defendants or examples of documents that were falsified or destroyed"). Second, just like the franchisees in *Putzier*, Plaintiffs "insist that [their] alleged substantive fraud also constitutes fraudulent concealment," but "the fraudulent conduct that forms the basis of [the underlying fraud claim] does ***not*** constitute fraudulent concealment absent a showing that the fraudulent conduct tended to deceive the plaintiff and prevent him from discovery of his claim." *Putzier*, 50 F. Supp. 3d at 978 (emphasis supplied). Here, Plaintiffs do not allege that McDonald's omissions "tended to conceal the fraud," nor could they in light of the extensive disclosures in the FA and FDD that cover the exact subject matter of the alleged omissions. *Id*; (*see also* Mot. at 33–35). Finally, under Illinois law, franchisors do not owe franchisees a fiduciary duty, and thus, "mere silence of the defendant and the failure of the plaintiff to discover his cause of action do not amount to fraudulent concealment." *Putzier*, 50 F. Supp. 3d at 978–79.

Plaintiffs' newfound attempt to plead the discovery rule in their opposition brief (only fraudulent concealment is alleged in the Amended Complaint (*see* AC ¶ 251)) also fails. As discussed above (*see supra* Section I.A), under the discovery rule, "the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Kribbs*, 68 N.E.3d at 1054. The Amended Complaint alleges eight omissions, all of which relate to the operation of Plaintiffs' franchises and also underlie their breach of contract claim. (*Compare* AC ¶ 249 *with* ¶¶ 241, 243.) Therefore, Plaintiffs' claim that they "did not know and had no reason to know [about the alleged fraudulent omissions] until after their respective exits from the franchise system, on or before 2015" (Opp. at 27) is contradicted by their own pleadings, and there is no basis on which to apply the discovery rule. *See Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (the discovery rule is applied on a "case-by-case basis").

Finally, it bears reemphasizing that Plaintiffs have failed to allege basic information regarding the omissions that purportedly impeded their ability to discover their claims, including the dates of the supposed omissions, as required by Rule 9(b). (*See* Section III.B, *supra*.) The failure of Plaintiffs to meet their pleading burden and allege facts establishing that their claims are timely cannot preclude dismissal. *See Rivas*, 2015 WL 718271, at *4 (plaintiffs cannot rely upon "vague allegation[s]" that fail to "set[] forth any date[s]" to "overcome the statute of limitations problems in the complaint").

<u>**CONCLUSION**</u>

For the foregoing reasons, McDonald's requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

Dated: February 2, 2021

*/s/ Patricia Brown Holmes*

Patricia Brown Holmes
Amy Curtner Andrews
Raymond D. Rushing
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
pholmes@rshc-law.com
aandrews@rshc-law.com
rrushing@rshc-law.com

Ariel Schepers Wilson
RILEY SAFER HOLMES & CANCILA LLP
121 W. Washington Street, Suite 402
Ann Arbor, Michigan 48104
(734) 773-4900
awilson@rshc-law.com

Andrew Jason Wu (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, California  94104
(415) 275-8550
awu@rshc-law.com

Loretta E. Lynch (*pro hac vice*)
Susanna M. Buergel (*pro hac vice*)
Karen R. King (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(202) 373-3000
lelynch@paulweiss.com
sbuergel@paulweiss.com
kking@paulweiss.com

*Counsel for McDonald's USA, LLC and McDonald's Corporation*

26

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on February 2, 2021, she caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*<u>/s/ **Amy C. Andrews**_____</u>*
Amy C. Andrews