1

<pre>
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

CHRISTINE CRAWFORD, et al.,        )   Docket No. 20 C 5132
                                   )
                    Plaintiffs,    )
                                   )
           vs.                     )
                                   )
MCDONALD'S USA, LLC., et al.,      )   Chicago, Illinois
                                   )   September 28, 2022
                    Defendants.    )   11:00 o'clock a.m.
</pre>

                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE STEVEN C. SEEGER

APPEARANCES:

For the Plaintiff:     THE FERRARO LAW FIRM
                       BY:  MR. JAMES L. FERRARO
                            MR. DARYL D. PARKS
                            MS. NATALIA MARIA SALAS
                       600 Brickell Avenue, Suite 3800
                       Miami, FL 33131
                       (305) 375-0111


For the Defendant:     RILEY SAFER HOLMES CANCILA LLP
                       BY:  MS. AMY C. ANDREWS
                       70 W. Madison, Suite 2900
                       Chicago, IL 60602
                       (312) 471-8756


                       PAUL, WEISS, RIFKIND,
                       WHARTON & GARRISON LLP
                       BY:  MS. KERISSA BARRON
                       1285 Avenue of the Americas
                       New York, NY 10019
                       (212) 373-3000


Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                       Official Court Reporter
                       219 S. Dearborn Street, Suite 2102
                       Chicago, Illinois  60604
                       (312) 435-5639

(The following proceedings were had telephonically:)

THE CLERK:  20 CV 5132, Crawford, et al., v. McDonald's USA, LLC, et al.

THE COURT:  Good morning, folks.  It's Judge Seeger. Let's get everyone's appearances on the record.  If we could please start with counsel for the plaintiffs.

MR. FERRARO:  This is Jim Ferraro for the plaintiffs, along with Natalia Salas.  Thank you.  Thank you, your Honor.

THE COURT:  Good morning.

MR. FERRARO:  Good morning.

MR. PARKS:  And Daryl Parks.

THE COURT:  Why don't you say that one more time.

MR. FERRARO:  Also Daryl Parks for the plaintiffs as well, your Honor.

THE COURT:  All right.  Very good.  Good morning, Mr. Parks.

MS. ANDREWS:  Hi, good morning, your Honor.  This is Amy Andrews, Riley Safer Holmes & Cancila, on behalf of McDonald's USA and McDonald's Corporation.

THE COURT:  Good morning, Ms. Andrews.

MS. BARRON:  Good morning, your Honor, Kerissa Barron.  I'm here from Paul, Weiss on behalf of McDonald's as well.

THE COURT:  I didn't quite catch that.  Can you say that one more time.

MS. BARRON: It's Kerissa Barron.

THE COURT: Barron?

MS. BARRON: That's correct.

THE COURT: All right. Very good. Good morning, Ms. Barron.

MS. BARRON: Thank you. Good morning, your Honor.

THE COURT: Do we have anybody else on the line who is going to be entering an appearance?

All right. Good morning, folks. We are here for ruling on the motion to dismiss. I'm going to give you an oral ruling.

Let me -- I fully acknowledge that you would prefer a written ruling. I will tell you that I would prefer to give you a written ruling. Our interests are aligned on that. I always prefer ruling in writing if I can, but given the volume of things on the district court's plate in this district, it's not possible. Every single district court judge in this building has hundreds of civil cases on his or her docket and hundreds of motions, and you cannot write on everything. So judges here issue oral rulings when they can. This is a situation where I think where I believe that an oral ruling will suffice.

In the interest of speed, I'm just going to read it. If you want a written copy, I would encourage you to order a transcript from the court reporter.

So with that, sit back, relax, and enjoy the ride, as they say.

We are here today for a ruling on defendants' motion to dismiss the plaintiffs' amended complaint under Rule 12(b)(6). The motion to dismiss is on the docket at docket number 24.

For the following reasons, the motion to dismiss the amended complaint is granted.

The Court's decision is, in large part, influenced by a strikingly similar case also in this district. It was pending in front of Judge Leinenweber. That's *Byrd v. McDonald's USA, LLC*, 2021, West Law 2329369, Northern District of Illinois 2021. There, the plaintiffs were represented by the same counsel. The plaintiffs brought a Section 1981 claim against the same defendants on behalf of a class with identical allegations -- often word for word. In fact, in comparing the two complaints in the respective cases, there was almost no difference in the substance of the allegations. This Court finds the decision granting a motion to dismiss in *Byrd* to be persuasive, and so it adopts largely the same reasoning here.

The long and the short of it is that the plaintiffs allege a broad and complex discriminatory scheme with too few details to paint a plausible story that holds together. So the Court, like the Court in *Byrd*, dismisses the Section 1981

claim.

The state law claims don't hold up either. Like the federal claim, the complaint contains far too little details to plausibly allege any breach of contract or any fraudulent admission by McDonald's.

So I'm going to be granting McDonald's motion to dismiss the amended complaint, and I'm going to give plaintiffs leave to amend.

So that's the punch line. I'm now going to give you an overview of the facts.

Before I dive in, I wanted to say that I have citations in my write-up here to the record. Almost all citations are to the amended complaint, needless to say. I have citations to support each one of the sentences I'm about to read. I think it's going to be a little cumbersome to read each of the citations every time. So for the sake of simplicity, and to speed things along, I, in large part, am not going to read the citations to paragraphs into the record. I don't think it's necessary. I think it would make the recitation of the facts hard to listen to. I'll give you the citations when I think it would be helpful to you.

With that windup, one other caveat. When I refer to the complaint, I'm referring obviously to the amended complaint, meaning docket number 30.

With that, here are the facts.

The plaintiffs in this case, all 77 of them, are black former McDonald's franchisees. In a nutshell, they allege that McDonald's "systematically kept black franchisees in underperforming locations with low revenues and high expenses where white franchisees refused to own and operate restaurants." I'm quoting paragraph 17.

That discriminatory conduct, the plaintiffs allege, "has resulted in an increasing cash flow gap between McDonald's black franchisees as compared to white ones." *Id.* at 10. It also has led to the decline of black franchisees by half. *Id.* at paragraph 12.

The Golden Arches are familiar to most people. McDonald's owns and operates roughly 39,000 restaurants around the world. While McDonald's owns most of the buildings that house its operations, nearly all of its restaurants are independently owned and operated franchisees. *Id.* at paragraphs 106-107.

The company exercises a generous amount of discretion when it comes to offering franchise opportunities. The complaint alleges "the decision to offer any franchise opportunity is within McDonald's sole discretion from the point of initial entry into the McDonald's franchise system and throughout the franchise relationship." *Id.* at paragraph 111.

McDonald's requires every franchisee to sign a

standard franchise agreement before the deal is done. Under the agreement, McDonald's USA, a wholly-owned subsidiary of McDonald's Corporation, is a franchisor. The agreement typically leases the franchise for a period of 20 years with no right for the franchisee to renew, extend, or acquire additional franchise locations. That said, a potential franchisee is not required to accept a franchise that is offered to them.

An individual who agrees to the franchise agreement signs up for some notable costs. For example, a franchisee may have to rebuild, remodel, or renovate a store at their own expense upon McDonald's request. See amended complaint at paragraph 118. He or she also agrees to pay fees to McDonald's for the right to operate the franchise. *Id.* at paragraph 128. These fees include service fees, which vary depending on the restaurant's sales, as well as payments to rent the building from McDonald's. A franchisee must pay their own occupancy costs, including property taxes and insurance. *Id.* at paragraph 117.

According to plaintiffs, McDonald's implemented its franchising scheme in a way that disadvantaged black franchisees. Specifically, they allege that McDonald's "places black franchisees in locations that are destined to fail, with low-volume sales and high operating costs." *Id.* at paragraph 9.

The company then uniformly charges all franchisees, even though the black franchisees' restaurants are less profitable and more expensive to maintain. *Id.* at paragraph 123. On average, the plaintiffs' average annual sales fell $700,000 below McDonald's national average for a franchise. *Id.* at paragraph 11. And lower sales for black franchisees means lower profits for black franchisees. *Id.* at paragraph 16.

Additionally, the plaintiffs claim that over the term of the franchise agreement, McDonald's demands that its black franchisees invest in renovations not required of its white franchisees. *Id.* at paragraph 20(d). They claim the company also conducts frequent inspections of the black franchisees' restaurants but doesn't do the same for their white counterparts. *Id.* at paragraph 20(j). And when the franchises face financial hardship, McDonald's offers less support to black franchisees than to white franchisees. *Id.* at paragraph 20(g).

All of this ends up leaving black franchisees with stagnant businesses that force them out of the system. In short, McDonald's gives white franchisees the opportunity to grow, renew, and expand their restaurants, but it denies those same opportunities to black franchisees.

In July 2020, about 50 black former franchisees filed this lawsuit. The defendants moved to dismiss the original

complaint, and in response, the plaintiffs filed an amended complaint with additional plaintiffs, now totaling 77 plaintiffs. I point you to the motion to dismiss, docket number 24, and the amended complaint docket number 30.

Plaintiffs bring with them diverse experiences, at least in some respects. They come from more than 20 states. *Id.* at paragraphs 36 to 97. I'm quoting here the amended complaint. They owned restaurants in more than two dozen different markets spanning from Orlando to New York to Milwaukee. Some owned a single restaurant, while others owned as many as 17 restaurants. One plaintiff bought his first franchisee -- I beg your pardon -- one plaintiff bought his first franchise in 1971. Another franchisee didn't join the system until 2013.

Importantly, they all have two primary characteristics in common: First, all of the plaintiffs are black. *Id.* at paragraphs 36 through 97. Second, they are former franchisees who left the McDonald's franchise system between 2010 and 2020.

The amended complaint includes three counts.

First, 47 of the plaintiffs allege that the defendants violated 42 U.S.C. Section 1981 by denying them "the same franchise opportunities available to white franchisees." See amended complaint complaint, paragraph 225.

Second, 74 plaintiffs claim that McDonald's breached

its franchise agreement when it steered black franchisees toward less favorable restaurant locations, withheld financial support, and imposed disproportionate and unreasonable renovation requirements. *Id.* at paragraph 241.

And third, 52 of the plaintiffs allege that the defendants fraudulently concealed material information relating to the franchise terms. *Id.* at paragraph 249.

Before the Court now is the defendants' motion to dismiss the amended complaint.

I'll now turn to the legal standard.

The standards for a motion to dismiss are well-established and familiar to everybody on this hearing. But before turning to the arguments, I'm going to give everyone just a brief refresher of exactly what those standards are. For the benefit of your ears, my throat, I'm not going to read each one of these citations, but I'll say enough to give you the gist of the standard which you all know already.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiffs' favor.

To survive a motion to dismiss, the plaintiff must give the defendants fair notice of the basis for the claim,

and it must be facially plausible.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  I'm quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *West Bend Mutual Insurance v. Schumacher,* 844 F.3d 670, 676, Seventh Circuit 2016. "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

When reviewing the motion to dismiss under Rule 12(b)(6), the Court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referenced to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675, F.3d 743, 745, note 1, Seventh Circuit 2012.

I'll now start with the first claim.  That's the claim under Section 1981.

Section 1981 prohibits "racial discrimination in the making and enforcing of contracts."  *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393, Seventh Circuit 2007.

"To state a claim under Section 1981, a plaintiff must allege: (1) membership in a racial minority; (2) an intent by the defendant to discriminate on the basis of race; (3) the discrimination concerns one or more of the activities enumerated in Section 1981(b); and (4) but for race, the plaintiff would not have suffered the loss of a legally protected right." *Byrd v. McDonald's USA, LLC*, 2021, West Law 2329369 at page 3, Northern District of Illinois 2021. There Judge Leinenweber was citing *Comcast Corp. v. National Association of African American Owned Media,* 140 Supreme Court 1009, 1014 (2020).

Like the situation in *Byrd*, the defendants argue that the amended complaint lacks any specific allegations to support a plausible inference that McDonald's intentionally discriminated against black franchisees. That is, McDonald's argues that the plaintiffs have not adequately pled the second element of a 1981 claim. McDonald's argues that, instead, the plaintiffs assert their claims in a "conclusory fashion."

On a motion to dismiss, "the degree of specificity required is not easily quantified, but the plaintiff must give enough details about the subject matter of the case to present a story that holds together." *McCauley v. City of Chicago,* 671 F.3d 611, 616, Seventh Circuit 2011. And "the required level of specificity rises with the complexity of the claim." *Id.* at page 616-617. "A more complex case will require more

detail." That's a quote at page 617.

Here, the Section 1981 claims rest on allegations of a complex, conspiracy-like scheme by McDonald's. According to plaintiffs, since the 1960s, McDonald's has consciously and covertly enacted policies to keep black franchisees across the country at the bottom of the barrel.

But the plaintiffs alleged in the complaint do too -- I beg your pardon. Let me restate that.

The facts alleged in the complaint do little to bring that complex scheme to the land of plausibility. In pleading a case of discrimination, Rule 8 requires a plaintiff to, at a bare *minimum*, lay out the "what," "who," and "when" of the case. See *Byrd*, 2021, West Law 2329369, at page 4, citing *Swanson v. Citibank,* 614 F.3d 400, 405, Seventh Circuit 2010. The plaintiffs must allege "(1) the type of discrimination (what); (2) who did it (whom); (3) and the date it occurred (when)." *Id.*, so that *Id.* there refers to the *Byrd* case. Again, Judge Leinenweber was citing *Swanson*, 614 F.3d at 405.

The complaint here makes it clear that the type of discrimination at issue is racial. But beyond that, we are left to speculate.

The complaint fails to tell the reader who the culprits were except at a very high level of generality, meaning McDonald's. As in *Byrd*, it "describes conduct or statements by various McDonald's managers and executives, such

as Thomas S. Dentice, a former executive vice president of McDonald's, who, in 1998, wrote an apologetic letter to the chairman of the National Black -- excuse me -- National Black McDonald's Operators Association, the NBMOA, in which he admitted that black franchisees had not attained the same level of success as their peers and promising to improve." I'm quoting *Byrd*, 2021, West Law 2329369 at page 4.

The complaint also references the 1976 testimony in the Senate of McDonald's former president of the Operator's Association, Donald R. Conley. At that hearing, he opined that "McDonald's primary tool" to discriminate against franchisees is "their power over renewal of franchise agreements." See amended complaint at paragraph 143, docket number 30. And the complaint describes how sometime around 2015, former McDonald's CEO Steve Easterbrook allegedly implemented "discriminatory policies...that negatively and disproportionally impacted black franchisees." *Id.* at paragraph 160.

But, again, like in *Byrd*, the complaint does not "connect any conduct by these McDonald's managers and executives to discrimination experienced by plaintiffs." 2021 West Law 2329369 at page 4. In fact, "the amended complaint does not even allege that the plaintiffs or any purported class members were subjected to any of these policies." *Id*.

The plaintiffs rely heavily on McDonald's repugnant

history of unfair practices, practices reaching as far back as 1955, to support their claim. But allegations of a generally unsavory history beginning decades ago are not enough. The complaint needs facts to support the plausible conclusion that the plaintiffs here suffered because of McDonald's intentional discrimination.

In *McDonald's v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, Seventh Circuit 2021 -- excuse me -- 2012, the Seventh Circuit similarly concluded that a complaint was deficient when it alleged only that the defendant was "aware of the disparate impact of its policies" and then asserted "in wholly conclusory terms that this impact was the purpose of" the defendant's actions.

So too here.

Simply put, the plaintiffs plead dots but can't connect them. "When stripped of McDonald's discriminatory history, the vague allegations are that at some unspecified time, plaintiffs and other African-American franchisees were steered to economically unattractive locations." *Byrd*, 2021 West Law 2329369 at page 4.

The complaint offers additional factual allegations about a few of the plaintiffs. But those allegations have serious pleading flaws of their own.

For example, the complaint describes the experience of plaintiff Brown, who had to conduct "unreasonable

renovations" to his restaurants. I'm quoting the amended complaint at paragraph 188(c). But the allegations lack any detail about how McDonald's treated him differently because of his race.

In another example, the complaint says that McDonald's required plaintiff Jakes to renovate his restaurant but didn't require the same of a white franchisee in the same area. *Id.* at paragraph 188(a). Again, those broad allegations -- with no other details on the when, how, or why McDonald's made those decisions -- only inch toward a plausible claim of intentional discrimination. It's something, but it's not enough.

Alleging that an entity treated someone adversely, without more, is not enough to create a plausible inference that an entity treated someone adversely because of their race.

Similarly, plaintiff Knox alleges that McDonald's refused to let her expand her franchises outside of her initial region, although they allowed white franchisees to do so. *Id.* at paragraph 188(b). Again, these facts lack sufficient detail to point to discrimination. That's especially true when you consider that the complaint alleges that several other black franchisees who were plaintiffs owned franchisees outside their initial region. I point you to paragraphs 42 where it talks about Kenneth Manning, paragraph

43 where it talks about Dawn Mussenden, paragraph 48 where it talks about John Mason, and paragraph 94 where it talks about Jacqueline Wynn. All of them owned franchises with restaurants in various locations.

What the plaintiffs call "representative examples" of discrimination cannot carry the day. At best, they describe adverse outcomes and explain them by adding on the phrase "because of race." But claims do not become plausible by "merely tacking 'because of race,'" That's a double unquote. *Williams v. State Farm Mutual Auto Insurance Company,* 2022 West Law 2390828, at paragraph 14, Northern District of Illinois 2022.

The *Byrd* court summed it up nicely:

"To put it mildly, the plaintiffs have alleged a massive, complex case of discrimination commencing decades ago, extending across the nation, that has personally impacted hundreds of African-American McDonald's franchisees. However, regardless of whether this case is classified as a complex case or a simple one, as *Swanson* says, the minimum allegations necessary to satisfy Rule 8 for a discrimination case are the three Ws: (1) the type of discrimination, i.e., what; (2) who did it, i.e., whom; and (3) the date it occurred, i.e., when. The amended complaint fails to meet this standard." *Byrd* 2021, West Law 2320360, at page 4.

So too here.

And remember these "representative examples" only describe the experiences of eight of the 47 plaintiffs who are bringing a claim under Section 1981. What happened to the other 39 named plaintiffs is anyone's guess. In telling their stories, they offer only vague allegations at the highest level of generality that are applicable to all plaintiffs. That is not enough. The detailed allegations of just a few plaintiffs are not detailed enough to state a claim, and that's especially true if there's an effort to apply those across the board to other plaintiffs. Detailed allegations of a few plaintiffs cannot be enough to keep the entire group afloat. Each plaintiff must plead his or her own case.

The defendants offer a second basis for dismissal. They argue that the complaint lacks allegations that the plaintiffs' race was a but for cause of their losses in their view because but for causation is another element of a Section 1981 claim. The defendants argue that the Court should dismiss the complaint. They rely on the *Comcast* case in the Supreme Court, 140 Supreme Court at 1014.

The Court agrees. Here, too, the generality of the complaint proves fatal. The plaintiffs point to statistical disparities as evidence of discrimination. But the complaint lacks connecting details between the disparities and the conclusion that those disparities are the result of racial discrimination.

Once again, it's conclusory.

The illustrative examples don't help in showing causation. For example, plaintiff Dominique alleges that McDonald's steered him to an urban, high-crime restaurant location based on his law enforcement background, not because of his race. See amended complaint at paragraph 173. Similarly, plaintiffs Simmons and Christine Crawford claim that McDonald's refused to consider their choice in a buyer for their respective restaurants. *Id.* at paragraph 216. But neither one alleges the company refused to do so because of his or her race. At the very least, there's not enough to get over the Rule 8 hump.

The complaint also names several other alternative reasons for the disparate outcomes. Some plaintiffs could not pay rent. See the amended complaint at paragraph 204. Others received poor business reviews. *Id.* at paragraph 20(j). The long and the short of it is that the complaint doesn't have enough allegations to create a plausible inference of nationwide discrimination.

Like the court said in *Byrd*, this Court "does not mean to imply that McDonald's operations over the years have not been tainted by the brush of racism. The fact that the first African-American franchisees didn't appear until 15 years after the franchise system was established in 1955 provides the opposite inference. However, historical

discrimination cannot be the basis for a Section 1981 discrimination suit filed in 2020." *Byrd* 2021 West Law 2329369 at page 5.

In short, it isn't enough to allege adverse action or disparate treatment and then just sprinkle conclusory allegations of race. Rule 8 demands more. Rule 8 demands sufficient facts give rise to a plausible inference of discrimination. And here the complaint is too general, too conclusory and doesn't offer enough details and enough factual granularity.

As a result, this Court concludes that the amended complaint lacks sufficient detail to plausibly state a claim against McDonald's for violations of Section 1981. Those claims are therefore dismissed without prejudice with leave to amend.

As an aside before turning to the next section covering the second claim, the Court notes that plaintiffs may face some serious timeliness problems going forward. The statute of limitations for a claim under Section 1981 varies depending on whether the claim is based on pre- or post-contractual conduct.

For pre-contractual conduct, including contract formation, Illinois has a two-year period of limitations. I have a long string cite here. I'm going to save you the trouble and just read you one of them. See *Dandy v. UPS*, 388

F.3d 263, 269, footnote 4, Seventh Circuit 2004. For post-contractual conduct, a four-year statute of limitations applies under Section 28 U.S.C. Section 1685. Again, *Dandy v. UPS*, 388 F.3d 263, 269, Seventh Circuit 2004.

At least some of the plaintiffs' claims appear to come too late. Any allegations that McDonald's steered black franchisees to undesirable locations are pre-contractual, and are therefore subject to a two-year statute of limitations. For the plaintiffs named in the original complaint, the relevant conduct necessarily must have occurred after June 8, 2008 to be timely; in other words, within two years of the filing of the lawsuit in June 8, 2020. For the plaintiffs who were added to the case for the first time in the amended complaint, the relevant date is November 16, 2018; in other words, two years before filing the amended complaint in November 16, 2020.

Almost half of the Section 1981 plaintiffs seem to allege pre-contractual conduct that predates the permissible period.

Some of those plaintiffs, such as Lois and Mitchell McGuire, Hayes Ferrell, Yvonne Knox, and Norman Williams, became McDonald's franchisees long before 2018. For example, look at the amended complaint at paragraphs 51, 52, 53, and 71.

Other plaintiffs face a different problem.

Plaintiffs Yves Dominique, Van Jakes, Keith and Kenneth Manning, Dawn Mussenden, Carrie Salone, Larry Brown, Ronnie Thornton, Arthur Scott, George Gipson, Michael Simon, Victor Bruce, Allen Stafford, Gloria and Keristin Holloway, Wise Finley, Lewis Anderson, and William Pete Washington each allege that they left the McDonald's franchise system sometime before the year 2018. I cite you the amended complaint at paragraphs 38, 39, 41, 42, 43, 45, 47, 49, 54, 57, 58, 59, 62, 63, 65, 66, and 72. If they left the McDonald's franchisee network before 2018, it might be unlikely that they're going to be able to plead in a claim for unlawful pre-contractual conduct that took place during that time period.

Even so at this point, given their dismissal, the claim on the grounds the Court isn't going to reach it, the Court is also mindful of the fact that courts typically do not reach the statute of limitations at the motion to dismiss stage unless plaintiffs have pled themselves out of court. So I'm going to stop short of issuing a definitive ruling now.

Plaintiffs appear to be time-barred, at least in part, in raising their claims. Perhaps one could conclude that they could challenge McDonald's conduct that falls within the statutory period at least in part.

Each of the plaintiffs, for example, seems to allege that McDonald's violated Section 1981 by denying them rights in "the making...of the contractual relationship" that never

came to be. That conduct might have occurred within the time frame that is actionable. So at this time, I am not going to be reaching the timeliness issue with any level of definitiveness, especially given the dismissal of the claim on other grounds. The Court simply takes note of a potentially serious issue. The Court encourages the plaintiffs to think it over as they ponder any possible amended complaint. It is certainly true that courts typically don't resolve timeliness issues at the motion to dismiss stage, but if the time comes, it can come almost right away in a case, the defendants would be well within their right to file an early summary judgment motion on this limited issue if they wanted to. So the Court encourages the plaintiffs to be mindful of that going forward.

If you amend the complaint, if it seems inevitable that it's going to be a loser on statute of limitations grounds, I'd encourage you to think it over and make sure that you want to go forward. That's the ruling on Section 1, the first claim.

Next, the Court turns to the breach of contract claim raised by 74 of the plaintiffs. That's Count 2.

To state a claim for breach of contract in Illinois, the plaintiffs must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 883,

Seventh Circuit 2022.

At the outset, the defendants argue that here, too, the plaintiffs' claims come too late. At this point, this Court is not going to issue a definitive ruling.

The statute of limitations for breach of contract is ten years from the time of breach. Again, that's different from the statute of limitations that I mentioned earlier which is two years. See 735 ILCS 5/13-26. So given the plaintiffs' respective filing dates, any breaches alleged to have occurred before 2010 are untimely.

Based on the Court's review of the complaint, it appears that none of the plaintiffs exited the McDonald's franchise system before 2010, so at least some of the breach of contract claims allegedly involve conduct that took place during that period. So the bottom line is it is not clear at this juncture from the complaint that any plaintiff has exceeded the relevant statutory period to bring a breach of contract claim. Again, I'm not going to reach the issue definitively, especially given the ruling at other points. But I did want to flag it. It does appear to be differently situated than the timeliness issue with the first claim.

Getting to the meat of it, the plaintiffs here point to two terms of the franchise agreement that McDonald's allegedly breached.

The first provision comes from Section 3 of the

agreement. There, McDonald's agreed to "make available to franchisees all additional services, facilities, rights, and privileges relating to the operation of the restaurant which McDonald's makes generally available, from time to time, to all its franchisees operating McDonald's restaurants." I'm quoting there the franchise agreement at paragraph 3. It is an exhibit to the amended complaint. It's Exhibit A-1. It's at docket number 30.

The second provision is Section 12 of the franchise agreement. It says that McDonald's "shall have the right to inspect the restaurant at all reasonable times to ensure that franchisee's operations thereof is in compliance with the standards and policies of the McDonald's system." I'm quoting there paragraph 12 of the franchise agreement. This part of the agreement also allowed McDonald's to require reasonable renovations to the restaurant. *Id.* at paragraph 12(c).

As a catchall, the plaintiffs add to their claim that McDonald's owed a duty of good faith and fair dealing under those terms of the contract, and breached it.

From McDonald's point of view, the plaintiffs fail to allege any contractual obligation by McDonald's at all. And "a breach of contract claim requires an identifiable breach of contract term." *Sevugan v. Direct Energy Services, LLC,* 931 F.3d 610, 614, Seventh Circuit 2019.

The Court agrees that plaintiffs have failed to

allege any breach of any contractual obligation.

Looking first at the claim under Section 3. I'll start with paragraph 3 of the franchise agreement.

The plaintiffs claim that McDonald's denied them "the right to grow their operations," "the right to participation in the Next Gen legacy program," which is a program the complaint gives no other details about as an aside, and also, "reasonable requests for financial assistance and/or restructuring plans that were offered to other franchisees." See amended complaint, paragraph 241, docket number 30.

I'll say, folks, that was not the smoothest reading of that provision. If you want to see what I'm talking about, look at the amended complaint at paragraph 241. You'll be able to follow it.

Those allegations, aside from their problematic vagueness, are unrelated to any obligation McDonald's had. In fact, the franchise disclosure document made clear to franchisees that "McDonald's is not required to provide you with any assistance." Let me read that again. "McDonald's is not required to provide you with any assistance." Franchise disclosure document at 24, amended complaint, Exhibit B, docket number 30. See also the franchise agreement, paragraph 28(a). Again, it's attached to the amended complaint. It's Exhibit A-1. That franchise agreement at paragraph 28(h) says, "The term of this franchise is set forth...with no

promise or representation as to the renewal of this franchise or the grant of a new franchise." I also point you to paragraph 28(c) of the franchise agreement. It says, "No representation has been made by McDonald's as to the future profitability of the restaurant."

Let me say that again. Paragraph 28(c) of the franchise agreement says, "No representation has been made by McDonald's as to the future profitability of the restaurant."

The same goes for the allegations about Section 12 of the franchise agreement. That section only imposed obligations on the plaintiffs to maintain up-to-date and compliant restaurants. It did not require McDonald's to inspect or not inspect the properties. It did not require McDonald's to impose or not impose certain renovation requirements. It left all that to the company's discretion. I point you there to paragraph 12(c) of the franchise agreement.

There isn't much to make out of the word "reasonable" either. Even if that word did impose some type of obligation on McDonald's, the complaint contains insufficient facts to suggest that McDonald's inspections and renovation requirements were unreasonable.

The plaintiffs argue that the problem her lies in McDonald's conduct "relative to other franchisees." I'm quoting there page 23 of the motion to dismiss, docket No. 44.

But they've pled no facts to support that assertion. Based on just reading the complaint, we know nothing about how often, on average, McDonald's inspected or required renovations in its stores or how the plaintiffs compared to everyone else in that metric. We don't know whether the plaintiffs' restaurants differed from other restaurants in a meaningful way to justify any difference. Simply calling McDonald's actions a breach of duty or declaring without more that it was unreasonable is not sufficient to get over the hump of Rule 8, *Iqbal*, 556 U.S. at 678.

Plaintiffs also invoke the implied covenant of good faith and fair dealing, but that doesn't save the day.

"Under Illinois law, the implied covenant of good faith and fair dealing is implied into every contract, but a breach of good faith and fair dealing does not create an independent cause of action separate from the breach of contract claim. *Schwartz v. Opportunity International, Inc.*, 2015 West Law 300591, Northern District of Illinois 2015. Instead, "good faith and fair dealing are used as construction aids in determining the parties' intent" when a contract is "susceptible to two conflicting constructions, one of which imputes bad faith to one of the parties and the other does not."

I have written separately in other opinions about the meaning of the implied covenant of good faith and fair

dealing. The basic concept is it's a gap filler. It's a rule construction. It is not designed to overtake or replace the plain language of the contract.

Here, it is not at all clear that the contract has any gap that needs filling. Even if the implied covenant of good faith applied, the plaintiffs, again, have not adequately pled that McDonald's acted in bad faith in its actions.

Basically, folks, looking on these provisions, I find that they don't give rise to an implied covenant of good faith and fair dealing. I don't think there's a gap that needs filling. It's not the appropriate circumstance here. There are a number of Seventh Circuit opinions on this. The Cookie case from Easterbrook is a classic. There are many other opinions. I can give you more citations if you want.

The bottom line here is these provisions are not the type of provisions that give rise to the implied covenant of good faith and fair dealing. They aren't provisions that require the filling of a gap where someone is intending to -- where someone is violating discretion that was afforded to that person.

Overall, the breach of contract allegations include no details about how McDonald's actions were unreasonable or constituted and alleged breach. This deficiency is only magnified when you consider the 74 plaintiffs assert a breach of contract count. Between those dozens of individuals, it's

unclear who allegedly suffered from unreasonable inspections, who had to make unfair renovations, et cetera, and who did not. Such vagueness undermines the claim.

What may be reasonable in one situation may or may not be reasonable in another. It is not appropriate to allow the plaintiff to go forward with dozens and dozens of plaintiffs at such a high level of generality. If you want to go forward, you got to go into more depth. You also have to offer more details, and the amended complaint here simply does not. The complaint simply does not give the Court enough to state a claim and does not give enough to create a plausible inference of a duty and a breach. Therefore, the breach of contract claim is dismissed without prejudice.

I'll now go to the third claim, fraudulent omission.

The third and final claim is a fraudulent omission claim. It's raised by 52 of the plaintiffs.

Here, too, the defendants ask the Court to dismiss the claim based on untimeliness. Again, the complaint does not clearly settle the lateness of the claim. I'm not offering a definitive ruling. I am just giving you my observations.

Illinois law requires a plaintiff to bring a fraud claim, including fraudulent omission, within five years of the cause of action. See 735 ILCS 5/13-205. The relevant conduct here includes conduct that occurred during the term of the

plaintiffs' franchise agreements. Because here, like in the breach of contract claim, no plaintiff exited the franchise system before the statutory time frame, it's at least possible that each alleges conduct that falls within the time frame to sue. Even so, at this early stage, dismissal based on untimeliness would be premature. So I'm not going to dismiss it at this stage. I'm simply flagging it going forward.

As the Seventh Circuit explained in *Chicago Building Design v. Mongolian House,* 770 F.3d 610, 613-14, Seventh Circuit 2014, "a motion to dismiss based on the failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." So, again, I'm not offering you a definitive ruling. I'm just flagging what I'm seeing in case the plaintiffs decide to go forward.

Turning to whether you state a claim.

The defendants maintain the dismissal is proper because the plaintiffs failed to plead several elements of a fraudulent omission claim.

"In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff." *Toulon v. Cont'l Cas. Co.,* 877 F.3d 725, 737, Seventh Circuit 2017.

Here, the gist of the complaint is that McDonald's did not tell plaintiffs this or that about operating a restaurant, including possible profitability. For example, plaintiffs claimed that McDonald's failed to tell them that the franchisees would make less money than other franchisees in other locations.

That theory runs into a basic problem.

"A claim of fraudulent inducement cannot be based on an alleged misrepresentation that is expressly disclaimed by the terms of the contract." *Ocean Tomo v. PatentRatings, LLC*, 375 F.Supp.3d 915, 930, Northern District of Illinois 2019.

Here, McDonald's points to several provisions of the franchise agreement that make clear the limitation of the relationship, as well as the risks of running the business.

For example, take a look at paragraph 28(c) of the franchise agreement. It provides: "No representation has been made by McDonald's as to the future profitability of the restaurant." Let me read that again. "No representation has been made by McDonald's as to the future profitability of the restaurant." I'm quoting there the franchise agreement, paragraph 28(c). It's the amended complaint in Exhibit A-1.

Similarly, take a look at paragraph 13 of the franchise agreement. It says that franchisees must "make repairs or replacements required: (i) because of damage or wear and tear or (ii) in order to maintain the restaurant

building and parking area in good condition and in conformity to blueprints and plans."

Similarly, take a look at paragraph 28(h) of the franchise agreement. It provides: "No future franchise or offers of franchises for additional McDonald's restaurant, other than this franchise, have been promised to franchisee..."

Let me give you one other example. Paragraph 13 of the preliminary agreement says: "Candidate is not obligated to accept any franchise offer." I'm quoting there the preliminary agreement, not the franchise agreement, the preliminary agreement, paragraph 13. It's attached to the amended complaint at Exhibit B, docket number 30.

So that's a long way of saying you can't hang your hat on something that is expressly disclaimed by the language of the contract itself.

Let me offer you the next point that I wanted to raise. A fraudulent omission theory typically involves a half truth. That is, it typically involves a situation where a party makes a misrepresentation, but omitted important information that would have been necessary to render the misrepresentation not misleading.

To go with an absurd example, imagine if the agreement had said that McDonald's would supply the franchisee with french fries, but McDonald's never mentioned that it

would provide only a five-pound bag once a year. It neglected to provide information that would render the representation not misleading.

That's not the situation we have here. McDonald's didn't make a misrepresentation in the sense that it didn't offer a half truth. McDonald's simply made a statement disclaiming responsibility for this or that. None of those provisions can give rise to a claim. It's not enough simply to say that McDonald's didn't tell them that they wouldn't be profitable because McDonald's told them they might not be profitable.

The plaintiffs also make allegations like statements the defendants "failed to disclose that McDonald's would begin harassing inspections of the fraud plaintiffs' restaurants if the fraud plaintiffs experience financial difficulty." I'm quoting there the amended complaint, paragraph 249(b). Essentially, what this allegation and other allegations claim is that the defendants committed fraud by not disclosing that they would, at some time in the future, break the law.

Among other things, the plaintiffs' allegations lack facts to suggest that McDonald's owed the plaintiffs any duty to disclose. Under Illinois law, a franchisor-franchisee relationship did not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. See *Siemer v. Quizno's Franchise Company*, 2008 West Law 904874 at

page 7, Northern District of Illinois 2008. And aside from cursory declarations of "unequal bargaining power" and "inducement," the complaint alleges no duty to disclose arising out of a relationship of "trust and confidence." I was quoting there the complaint at paragraphs 131 and 171. I'm also referring you to the *Connick* case, 675, N.E.2d. at 500.

In the end, plaintiffs give no reason why McDonald's was under an obligation to disclose certain information. In other words, folks, you have a franchisor-franchisee relationship. It doesn't create a fiduciary relationship. There are no facts in the relationship, according to the complaint, that would give rise to an overarching duty to disclose.

If anything, the complaint gives McDonald's express contractual rights to inspect or not inspect, to approve or not approve -- to approve or not approve future franchises, et cetera. Those aren't the sorts of provisions that can give rise to a duty of care.

The allegations look even weaker when viewed through the lens -- I beg your pardon -- when looked through the lens of Federal Rule of Civil Procedure Rule 9(b). That rule requires plaintiffs to plead fraud claims with particularity.

Pleading fraudulent omission "ordinarily requires describing the 'who, what, when, where, and how' of the

fraud." *AnchorBank, FSB v. Hofer,* 649 F.3d, 610, 615, Seventh Circuit 2011. This standard includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911, Seventh Circuit 2016.

The complaint excludes most of these details for all of the 52 fraud plaintiffs. The complaint lacks information about "specific names, dates, times, or content of the misrepresentations or omissions that give rise to the alleged fraud." I'm quoting there the *AnchorBank* case, 649 F.3d at 610. I'd also point you to *Putzier v. Ace Hardware Corp.,* 50 F.Supp.3d 964, 985-87, Northern District of Illinois 2014.

At most, the complaint offers generalized allegations. It offers allegations with the high level of generality. It makes claims like "McDonald's failed to disclose material information to the fraudulent omission plaintiffs throughout their franchise terms," about franchising opportunities, renovation requirements, and inspections. I was quoting there the amended complaint in paragraph 249. Those allegations do not satisfy Rule 9. The allegations lack details about who said what to whom, when, and how. It doesn't say much about what fraud each plaintiff experienced or to whom, how it happened. Nothing. It's just a high level of generality, and Rule 9(b) does not allow high

levels of generalities.

At times, the parties debate other aspects of the fraud claim like what admissions of future conduct are actionable, and whether McDonald's integration clause precludes liability. I'm not going to get into those issues now because I don't need to. It seems pretty clear it doesn't satisfy Rule 9(b). So for that reason, I'm going to dismiss Count 3 as failing to state a claim. That count, like the others, is dismissed without prejudice.

Folks, here is the conclusion.

Plaintiffs have not alleged a claim with a level of sufficiency that complies with Rule 8 or for the fraud claim with Rule 9. The amended complaint is therefore dismissed without prejudice.

I will give the plaintiffs leave to file another amended complaint, a second amended complaint within 21 days, if they choose to do so, and that's my ruling.

Okay, folks. I know there was a lot there. It was a lot to listen to. I'm empathetic that you had to sit there and listen to all that. If it's any small consolation, your ear is undoubtedly as sore as my throat. I know that was a lot to listen to. Thank you again, folks, for bearing with me and listening to an oral ruling.

I know it's hard. I get it. I know it's hard. If you want it in writing, I would want one too, I would

encourage you to order one from the court reporter. They can get you a ruling and you can read it, digest it, think it over. I'm sure they'd be happy to contact you.

Judge Kennelly's court reporter is kind enough to be transcribing this today. Thank you, Carolyn, for pitching in. I appreciate you doing that. It's kind of you.

Please, folks, if you want a transcript, please reach out to Carolyn through Judge Kennelly's chambers. The contact information should be available on the website. If it's easier to contact my courtroom deputy -- excuse me -- my court reporter, Amy Spee, and then have her put you in touch with Carolyn, you can do that. It should be easy to contact the court reporter, and she'll get you a transcript if you want.

That's the ruling.

Plaintiffs' counsel, I don't know if you want to amend the complaint. I'll give you leave to do so if you want. You have 21 days.

I don't know if you filed an amended complaint in the Leinenweber case. Did you do that?

MR. FERRARO: Your Honor, the case settled --

THE COURT: Okay.

MR. FERRARO: -- before we did that.

THE COURT: Got it. Okay. So here's what I would say. I've made my ruling. You've got 21 days to do it. I don't know if the parties here are talking settlement. Maybe

you wanted the ruling first.

If it comes out that you start talking settlement and you want a little bit more time to file an amended complaint, I would give that to you.

Without giving me any nitty-gritty details here, folks, where do things stand on the settlement front? I'll start with plaintiffs' counsel.

Has there been any discussion, anything of note? Do you want that opportunity now? What was the last offer, et cetera? Tell me -- tell me who you are, because I don't know who you are -- hang on, hang on, hang on. And please go off speaker because I can't hear you.

MR. FERRARO: This is Jim Ferraro.

THE COURT: Jim, Jim, hang on. Jim, go ahead.

MR. FERRARO: Yeah, we had -- over time, we have had some discussions. Way back when, we did a mediation, and we're far apart, but we've been amenable to talking again and trying to close the gap. I mean, this thing started, you know, in the hundreds of millions, and, you know, we've indicated we could do a whole lot better than that, and they were kind of like around ███████.

THE COURT: I don't really care to know the numbers.

MR. FERRARO: Right.

THE COURT: That's not where we are. I only care about whether you're talking. Are you talking or not?

MR. FERRARO: Well, not lately, but we were -- we're open to talk. We are open to talk. We think it's a good idea to talk. If not, we will definitely be amending if we can't get something done. So that's where we are.

I've made several overtures over the last couple of months. And, you know, they say they're amenable too, but we have to come up with some ground rules. I think we should talk again.

I don't know if it's worth a mediation, your Honor. I don't know. Not necessarily a court-ordered mediation, but I think another mediation might not be a bad idea.

THE COURT: Okay. Have you talked about doing a settlement conference with the magistrate judge?

MR. FERRARO: Well, I would be amenable to that, your Honor, and we have not talked about that.

THE COURT: Okay. Here's what I'd like everyone to do. I want you to let your clients know about the ruling, if you haven't already. I bet you have. If you haven't already, please let them know. I want to you have some settlement discussions.

I want you to file something by two weeks from Friday and let me know if you want me to make a referral to the magistrate judge for a settlement conference.

MR. FERRARO: Okay.

THE COURT: And everyone on the call hopefully knows

how good the magistrate judges are in this building at getting people to resolve their differences. They're quite effective. They've been around the block a lot of times, and they're free. We have a very sophisticated magistrate judge bench here. I encourage you to think that over.

Given that, I'm going to give you just a little bit more time. I'm going to give you three weeks from Friday, 23 days to get your amended complaint on file.

If you make progress on the settlement front and you need a little bit more time for an amended complaint, I would be inclined to give it to you if there is progress and hope.

Okay.

MR. FERRARO: Thank you. Thank you very much, your Honor.

THE COURT: That's what I would say.

Defendants, I don't know if you have anything to add to that. I don't really need you to say anything in detail. I know the client's probably waiting for the ruling which makes sense to me. I don't know what you have to add, but I'm always listening to anything you have to say. Go ahead.

MS. ANDREWS: Thank you, your Honor. Yes, it's Amy Andrews.

Certainly, we have had had some conversations with Mr. Ferraro. We're obviously amenable to conversations. I think the only thing I would add here, you know, that

distinguishes this case from the *Byrd* case is that those were current franchisees and these are all former. We're dealing with just a very different time period, a very different set of people, and I think that that has perhaps, you know, proven to be I guess a challenge in terms of how we view the case. I'm hoping now with some clarity from the Court that that's something that we can move forward to talk about. But obviously, we'll have that conversation with Mr. Ferraro.

THE COURT: Got it. Okay.

And to tie a ribbon on all this, folks, I don't pressure people to settle. I don't twist arms. I don't put undue pressure on anybody to write a check and leave the building.

What I do do, though, is encourage people to talk. I do that because it's usually in their best interest to talk. And it's in the interest of the system for people to do the talking informally if they can.

Take nothing of what I've said here on the settlement front to be any suggestion in any way, shape, or form of what people should do or what I think of the case or anything like that.

I promise you I have this conversation in every case. I encourage people to talk in every case because it's in their interest to do so, and that's the way the system is designed.

When you go back to your clients, make sure that

message is delivered. Maybe you'll settle; maybe you won't. If you settle, you settle. If you don't, we'll look forward to getting an amended complaint, and I'll take it up.

Okay. That's a long way of saying all I want you to do at this point is have some discussion, talk with your client, talk with each other and see if there's going to be a productive discussion that can be had here. If so, great. If not, that's great too, and we'll move forward.

Anything else on the settlement front to talk about?

MR. FERRARO: Not by the plaintiff, your Honor.

MS. ANDREWS: Nothing. Nothing for defendants.

THE COURT: Got it. Okay. Thank you for getting on the call. Thank you for bearing with me today. I look forward to getting your submissions down the road.

In the meantime, I hope everyone stays safe and healthy, and I'll talk to you next time we talk.

MR. FERRARO: Thank you very much, your Honor.

MS. ANDREWS: Thank you, your Honor.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____          _____
Carolyn R. Cox                            Date
Official Court Reporter
Northern District of Illinois
/s/Carolyn R. Cox, CSR, RPR, CRR, FCRR