UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH KING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCDONALD'S USA, LLC, a Delaware limited liability company, and MCDONALD'S CORPORATION, a Delaware corporation, <br><br> Defendants. | Case No.: 1:20-cv-5132 <br><br> Hon. Steven C. Seeger |

### MCDONALD'S USA, LLC AND MCDONALD'S CORPORATION'S REPLY IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

"A plaintiff who says that he has a claim, in conclusory fashion, doesn't say enough." *Etheridge v. Hudson Grp. Retail, LLC*, No. 20-cv-7204, 2022 WL 375556, at *4 (N.D. Ill. Feb. 8, 2022) (Seeger, J.). Twenty-two Plaintiffs stating in unison that they have claims, without supporting facts or law, fare no better. Since this Court's cautionary dismissal of Plaintiffs' First Amended Complaint, the operative complaint has increased in length, but not in substance. The same fatal pleading deficiencies that plagued prior iterations of the complaint remain—in particular, the "hopelessly time-barred" nature of most of Plaintiffs' claims, *Cancer Found., Inc. v. Cerberus Cap. Mgmt.,* LP, 559 F.3d 671, 675 (7th Cir. 2009), and Plaintiffs' insistence that roughly describing a complex, discriminatory scheme can substitute for the individualized allegations *Twombly, Iqbal*, Rules 8 and 9, and this Court demand. Indeed, the theme of Plaintiffs' own Opposition betrays the very deficiency in the Second Amended Complaint ("SAC") that compels dismissal—in a non-class action, the isolated experiences of twenty-two people, which on their own do not meet the elements

of individualized race discrimination claims, cannot combine into one "full story" that states a cognizable claim on behalf of the whole group. *See, e.g.,* Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") [ECF No. 109] at 2–3 ("Defendants' cherry-picked facts (through self-serving "summaries" and "timelines" which fall squarely outside of the four corners of the complaint) do not tell the full story as alleged by Plaintiffs, which must be accepted as true, with all inferences drawn in Plaintiffs' favor."). The "full story" told in the SAC does not satisfy the pleading standard, conform to the applicable statute of limitations, or provide the required specificity. Nor should it satisfy this Court. *See, e.g.*, September 28, 2022 Motion to Dismiss Ruling Transcript ("MTD Tr.") [ECF No. 68] at 30:5–10 ("It is not appropriate to allow the plaintiff to go forward with dozens and dozens of plaintiffs at such a high level of generality. If you want to go forward, you got to go into more depth. You also have to offer more details, and the amended complaint here simply does not."). Plaintiffs' SAC should therefore be dismissed, this time with prejudice.

**I.  PLAINTIFFS' ATTEMPTS TO SHIRK THE RELEVANT PLEADING STANDARD IGNORE WELL-ESTABLISHED LAW.**

Instead of heeding this Court's explicit warning that more specificity was required in their complaint, Plaintiffs attempt to reframe the applicable pleading standard to something more favorable to their generalized claims. *See* MTD Tr. 17:18–22 ("regardless of whether this case is classified as a complex case or a simple one, as *Swanson* says, the minimum allegations necessary to satisfy Rule 8 for a discrimination case are the three Ws: (1) the type of discrimination, i.e., what; (2) who did it, i.e., whom; and (3) the date it occurred, i.e., when."); Opp. at 10. For example, inexplicably relying on cases that pre-date *Comcast*, Plaintiffs argue that "the Supreme Court and Seventh Circuit following *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1019 (2020), have repeatedly reversed lower courts that impose a heightened pleading requirement in these cases." Opp. at 12 (citing Supreme Court cases from 2002, 2007, and 1993; a 2007 Seventh Circuit case; and

2

a 2014 N.D. Ill. case). It therefore remains unclear what courts, if any, Plaintiffs believe have taken issue with the oft-cited causation pleading standard laid out in *Comcast*. Asking Plaintiffs to conform their pleadings to well-established law does not attempt to impose an improperly heightened pleading standard. As with all Section 1981 claims, Plaintiffs must: (1) provide as much detail and support as is necessary to prove that the complex scheme they allege states a plausible claim; and (2) plead fraud with the requisite particularity. *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803–04 (7th Cir. 2008); *see also McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 887 (7th Cir. 2012) ("[T[he required level of factual specificity rises with the complexity of the claim."); *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016); *see also* MTD Tr. at 4:22-24, 12:19-13:18 (reviewing applicable standard on a Rule 12(b)(6) motion). Just as was the case in September 2022 when this Court granted McDonald's prior Motion to Dismiss, it remains that the broad scheme Plaintiffs allege fails to plead individualized allegations as required.

According to Plaintiffs, it is enough to plead specific allegations for each individual plaintiff that "give the defendant sufficient notice to enable [it] to begin to investigate and prepare a defense." Opp. at 13. This characterization is not only an overly generous description of the SAC, but also incomplete, as it fails to account for the complexity of issues raised here. A plaintiff must both give a defendant notice of the basis for their claims *and* the claims must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); MTD Tr. at 13:9-13. Establishing plausibility here, where Plaintiffs allege a complex and egregious scheme to prevent Black independent business-owners from succeeding, requires more than conclusions. *Iqbal* at 678–79 ("[A] plaintiff armed with nothing more than conclusions," cannot "unlock the doors of discovery."); *McReynolds*, 694 F.3d at 887. By continuing to plead a broad, complex scheme with minimal continuity, detail, and support, Plaintiffs allege nothing more than conclusory allegations and, accordingly, fail again to carry their burden.

3

**II.     THIS COURT CAN, AND SHOULD, DISMISS PLAINTIFFS' TIME-BARRED CLAIMS AT THE PLEADING STAGE.**

As this Court acknowledged in its prior ruling, "…courts typically do not reach the statute of limitations at the motion to dismiss stage." MTD Tr. at 22:15–18. That is because typically, Plaintiffs' do not assert claims that are, on their face, so "hopelessly time-barred" as to warrant dismissal. *Cancer Found.,* 559 F.3d at 675. Yet that is what Plaintiffs have done here.[1] On its face, much of the SAC defeats itself. *Laslie v. Cicero*, No. 20-CV-1831, 2021 WL 1853250, at *7 (N.D. Ill. May 10, 2021) (Seeger, J.) ("A party can plead itself out of court by alleging facts that establish an impenetrable defense to its claims. That's exactly what [the plaintiff] did here. He alleged that he received the EEOC's Right to Sue letter in May of 2019, long before he filed suit in March 2020. So he pled that he was late. Taking that allegation as true, the statute of limitations bars his claim.") (cleaned up); *see also, Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Rivas v. Levy*, No. 11-C-02738, 2015 WL 718271, at *4 (N.D. Ill. Feb. 18, 2015) (granting 12(b)(6) motion to dismiss Section 1981 claims where the allegations in complaint "clearly reveal[ed] that relief is barred by the applicable statute of limitations"); *Cui v. Elmhurst Police Dept.*, No. 14 C 8330, 2015 WL 2375252, *2 (N.D. Ill. May 14, 2015) (same). Plaintiffs' time-barred claims should therefore be dismissed as outlined in Exhibit A to McDonald's Motion. *See* Defendants' Memorandum in Support of Rule 12(b)(6) Motion to Dismiss the Second Amended Complaint ("Defendants' Mem."), Ex. A. [ECF No. 97-2].

---

[1] Indeed, the Court implicitly recognized as much when it ordered the parties to identify, with specificity, the date when each Plaintiff left the McDonald's franchise system for purposes of determining which claims are time-barred before expending unnecessary resources on untimely claims. *See* ECF No. 87 ("The statute of limitations is an affirmative defense. Even so, McDonald's has raised the issue, and the parties will need to address it one way or the other. Sooner is better than later.").

Forced to confront their own pleading, Plaintiffs propose two ways their untimely claims survive applicable law—as a continuing violation, and through intentional concealment of material facts. Opp. at 17–18. Neither is availing. This Court's prediction that Plaintiffs "may face some serious timeliness problems going forward" has come to fruition, and this Court should decline Plaintiffs' invitation to extend the limitations period based on inapplicable legal doctrines. *See* MTD Tr. at 20:17–18.

*First*, Plaintiffs' invocation of the continuing violation theory is not grounded in the facts of their complaint. *See, e.g.*, *Payne v. Abbott Labs.*, 999 F. Supp. 1145, 1150 (N.D. Ill. 1998) ("If the factual allegations of a complaint are insufficient to form the basis of tolling the statute of limitations based on the continuing violation doctrine, courts routinely dismiss plaintiff's complaint as untimely."). Nor does the continuing violation doctrine apply where the conduct at issue amounts to a series of discrete acts. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). That is because "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each is "separate[ly] actionable." *Id.* at 114. Plaintiffs' claims—that McDonald's placed Plaintiffs in poor-performing and dangerous locations, required them to undertake unnecessary rebuilds, or gave them unwarranted poor grades after restaurant inspections—are clearly discrete acts that, by their nature, cause harm that is immediately recognizable and cannot therefore constitute a continuing violation. *See, e.g.*, *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 700–01, 708–09 (7th Cir. 2002) (holding that transfer to a predominately African-American area, a conflict with a white office administrator, allegedly discriminatory application of the company's dress code, denial of vacation, and termination were all discrete acts, not a continuing violation); *see also Fischer v. Caterpillar, Inc.*, No. 11 C 1665, 2012 WL 851550, at *3 (N.D. Ill. Mar. 13, 2012) (finding continuing violation doctrine inapplicable to § 1981 claims where "[t]he conduct alleged by [plaintiff]

5

in this case involves discrete acts, such as when [plaintiff] was allegedly told that she would not be eligible to work overtime and when she was denied the opportunity to bid on other jobs.").

Furthermore, Plaintiffs cannot invoke the continuing violation doctrine by manufacturing and then pleading vague theories about McDonald's purported discriminatory practices. *Morgan* forecloses the use of "pattern and practice" allegations to toll claims arising from discrete acts like those alleged here. *See* 536 U.S. at 111–12. However, even if a "pattern and practice" theory was available, the "ongoing pattern must be shown through [plaintiffs'] ***individual claims of discrimination***, not through other employees' claims and not through a general pattern or practice." *Daniels v. Fed. Reserve Bank of Chi.*, No. 98 C 1186, 2004 WL 419796, at *6 (N.D. Ill. Mar. 4, 2004) (emphasis added). In *Daniels*, the court rejected the plaintiffs' argument "that a continuing violation is demonstrated by each of [p]laintiffs' allegations that the [defendant] had a long-held 'pattern and practice' of racial discrimination against African-Americans and that the [defendant's] alleged discriminatory acts were similar, repetitive, and continuous." *Id.* Similarly here, Plaintiffs' conclusory allegations of a pattern or practice, which lack individualized support, do not toll the applicable statute of limitations, particularly because pattern or practice claims cannot prop up a complaint by individual, non-class-action plaintiffs. *Matthews v. Waukesha Cnty.,* 759 F.3d 821, 829 (7th Cir. 2014); *see also Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 968–69 (11th Cir. 2008) (expressing the "prudence of limiting a private pattern or practice claim to certified class actions" and the problematic res judicata and collateral estoppel issues "that would arise if the law permitted an individual to prosecute a pattern or practice claim without formally representing all similarly-situated employees."); *Bacon v. Honda,* 370 F.3d 565, 575 (6th Cir. 2004); *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 356 n. 4 (5th Cir. 2001); *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760 (4th Cir. 1998), vac. on other grounds, 527 U.S. 1031 (1999); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 711 (2d Cir. 1998).

*Second*, Plaintiffs' alternative theory—that the statute of limitations should be delayed because McDonald's intentionally concealed material facts relating to income gaps between Black and white franchisees and made "false promises of parity"—is similarly meritless. Opp. at 18–19. Nonsensically, Plaintiffs claim that for years, even decades, they were wholly unaware that they were a target of the far-reaching, systemic race-based conspiracy outlined in the SAC. On the same day in January 2020, the argument goes, all twenty-two Plaintiffs collectively learned they had been individually discriminated against when an unrelated lawsuit was filed against McDonald's by two former employees for race discrimination. The date of that lawsuit, according to Plaintiffs, therefore controls the statute of limitations analysis in this case.

Plaintiffs' concealment argument is belied by both the facts contained in the SAC and applicable law. Even if Plaintiffs could plausibly allege that they were unaware that they were subjected to the broad-sweeping race-based conspiracy outlined in the SAC, a "plaintiff's claim accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Juniel v. Park Forest-Chicago Heights Sch. Dist. 163*, 161 F. Supp. 2d 910, 914 (N.D. Ill. 2001) (emphasis supplied), aff'd, 46 F. App'x 853 (7th Cir. 2002). Accordingly, Plaintiffs' claims accrued when they became aware of the acts that form the basis of the SAC—in other words, the claims accrued when the actions took place. *See* SAC (complaining of frequent inspections and unreasonable grading, mandatory rebuilds, denial of financial assistance and rewrite, each of which Plaintiffs were aware of when they happened). Thus, Plaintiffs' reliance on *Wilbern v. Culver Franchising Sys., Inc.*, No. 13 C 3269, 2015 WL 5722825 (N.D. Ill. Sept. 29, 2015) is misplaced. There, the defendant claimed to have rejected the plaintiff's application for a franchise opportunity in 2009, but never actually informed the plaintiff of that decision, who had no reason to know of it until the defendant terminated his existing franchise. *Id.* at *21–22. The court sensibly concluded that the plaintiff's claim accrued when he learned of the denial and thereby discovered his injury. *Id.* Here,

7

where Plaintiffs are not claiming that McDonald's failed to promptly notify them of any of the decisions that underlie their claim, *Wilburn* is inapposite.

### III. PLAINTIFFS HAVE NOT CURED THE FATAL DEFICIENCIES IN THEIR SECTION 1981 AND 1982 CLAIMS PREVIOUSLY IDENTIFIED BY THE COURT.

Even after the Court granted Plaintiffs the opportunity to remedy their intentional discrimination claims, they have again failed to meet their burden. Rather than curing the deficiencies, Plaintiffs add details that do nothing more than superficially compare Black franchisees' experiences with those of white franchisees. Plaintiffs add nothing to the SAC that supports their assertion of the existence of a complex scheme intentionally created and carried out by McDonald's to ensure the failure of its Black franchisees. For this reason, as discussed in detail herein, Plaintiffs' Section 1981 and 1982 claims should be dismissed for failure to state a claim.

#### A. Plaintiffs Have Failed to Plead Intentional Discrimination.

Plaintiffs conclusorily assert that McDonald's engaged in intentional discrimination against Black franchisees by steering Plaintiffs to less-desirable restaurant locations, requiring Plaintiffs to make investments in their restaurants through rebuilds and renovations, denying opportunities for growth, refusing to give Plaintiffs rent relief and financial assistance, imposing unfair inspections and grading, and forcing them out of the McDonald's System. *See* SAC ¶¶ 183–237. But "a generic statement, dressed in conclusory garb" is not enough. *Bracken Data, Inc. v. Guel,* No. 22-cv-273, 2022 WL 3999810, at *13 (N.D. Ill. Sept. 1, 2022) (Seeger, J.). As the Supreme Court has clearly established, broad allegations of a program to discriminate are insufficient: Plaintiffs must introduce hard facts making it plausible that there was, in fact, intentional discrimination. *Iqbal* at 681–83. As in *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012), Plaintiffs plead no facts suggesting that the alleged "ongoing practices" even existed, much less that they were designed with an intent to discriminate.

8

Although the SAC largely mirrors the previously dismissed Amended Complaint, Plaintiffs try to convince the Court that they have now "described in painstaking detail" the adverse treatment that forms the basis of their lawsuit. Opp. at 23. Not so. Plaintiffs may have doubled-down on their rhetoric, but they provide few, if any, specific facts that support individualized claims of intentional discrimination by identifiable actors at McDonald's. And Plaintiffs' bolstered "History of Discrimination" section of the SAC, ¶¶ 104–155, does little to move the needle. This Court already explained that broad allegations of a discriminatory history do not suffice to state a claim, and Plaintiffs fail to introduce any reason why the Court should depart from its prior analysis and reach a different conclusion here. *See* MTD Tr. At 4:22–5:1 (Plaintiffs "allege[d] a broad and complex discriminatory scheme with too few details to paint a plausible story that holds together."). Thus, Plaintiffs' additions to the SAC (including additional words and minor details throughout) do not save Plaintiffs' claims.

For instance, in many places, Plaintiffs simply amended the Complaint to broadly allege that unidentified white franchisees were not required to make certain renovations that Black franchisees were required to make. *See, e.g.,* SAC ¶¶ 428-429, 517. But without more, such an allegation amounts to the same type of claim this Court dismissed—one that relies on an alleged history of discrimination but fails to point to any policy McDonald's implemented with intent to discriminate against Black franchisees. As this Court cautioned, "[a]ny allegation that a plaintiff was treated differently than a white franchisee might 'only inch toward a plausible claim of intentional discrimination,' but it is certainly 'not enough.'" MTD Tr. at 16:10–12. Adding more of the same does not salvage Plaintiffs' claims. *See* Opp. at 24 (adding details about differences in treatment between Black and white franchisees).

Plaintiffs also introduce several categories of indirect evidence they say establish that McDonald's intentionally discriminated against them: "(1) being targeted for undesirable locations,

9

often through race matching, as compared to white franchisees; (2) exclusion from opportunities provided to white franchisees; and (3) being held to a higher standard than white franchises." Opp. at 25–27. According to Plaintiffs, these categories do more than merely alleg[e] that Defendants "treated [Plaintiffs] differently than whites, on the basis of racial animus." Opp. at 29. To the contrary, the language of each category makes clear that the allegations do nothing more than compare Black franchisees' experiences to those of white franchisees, without any suggestion that those individuals were similarly situated or other relevant facts, just as the Court advised against. *See* MTD Tr. at 16:10–12.

Next, Plaintiffs claim that McDonald's "attempts to avoid its own history" in arguing that the claims alleged are implausible. Opp. at 27. As discussed in detail herein, allegations of a history of discrimination do not suffice to state a claim in the present. This Court spoke about this concept at length in granting McDonald's prior Motion to Dismiss: "[A]llegations of a generally unsavory history beginning decades ago are not enough. The complaint needs facts to support the plausible conclusion that the plaintiffs here suffered because of McDonald's intentional discrimination." MTD Tr. at 14:25–15:6. Plaintiffs' allegations of "systemic discrimination," without further detail explaining how McDonald's intentionally targeted Black franchisees, do not suffice to state a claim. *See, e.g., McReynolds*, 694 F.3d at 873 (refusing to credit plaintiffs' theory that discriminatory intent underlay a company policy merely because the plaintiffs said so).

**B.      Plaintiffs Fail to Plead "But For" Causation.**

In a Section 1981 action, "[e]ven at the pleading stage, the causation requirement is robust. *Sanchez v. Tootsie Roll Indus., LLC,* No. 19-CV-4527, 2021 WL 4936240, at *5 (N.D. Ill. May 18, 2021) (Seeger, J.). "'[A] plaintiff must initially plead and ultimately prove that, but for race, he would not have suffered' the adverse employment action." *Id.* (quoting *Mir v. State Farm Mut. Auto. Ins. Co.,* 2021 WL 717091, at *3 (7th Cir. 2021), reh'g denied (Mar. 11, 2021) (citing *Comcast,* 140 S.

10

Ct. at 1019) (emphasis in original)). Plaintiffs' SAC wholly ignores this "robust" requirement and instead relies on Plaintiffs' subjective and apparently collective belief that an "inference of discrimination" underlies the so-called disparate treatment of Black and white franchisees. But under *Swanson* and its progeny, Plaintiffs must set forth, for each Plaintiff and each allegedly discriminatory act, who at McDonald's allegedly committed a discriminatory act and when it occurred. *See, e.g., McCauley v. City of Chi.*, 671 F.3d 611, 616–17 (7th Cir. 2011) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.") (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010); *see also Lemon v. Myers Bigel, P.A.*, No. 19-1380, 2021 WL 161978, at *6 (4th Cir. Jan. 19, 2021) (finding that, "in the absence of plausible allegations that, for example, [] white partners were similarly situated," plaintiff's "allegation that she was subject to a different short-term leave application process than the firm's white partners is by itself insufficient" to plead but-for causation under *Comcast*); *Rubert v. King*, No. 19-CV-2781 (KMK), 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020) (finding that "boilerplate assertion[s] unsupported by specific facts" that plaintiff was "fired because defendants saw him as another expendable Hispanic" and that "Walmart has a history of discrimination and illegal conduct" were insufficient to plead but-for causation). Plaintiffs' broad assertions that "but for" their race, largely unidentified McDonald's actors would not have taken certain non-specific actions do not establish "but for" causation in a complex scheme as contained in the SAC.

**IV. PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM REMAINS UNSUPPORTED.**

Like the remainder of the claims addressed herein, Plaintiffs fail to remedy the prior deficiencies in their fraudulent concealment claim. Barely amending the language of their fraudulent concealment claim to address the Court's concerns that McDonald's, as a franchisor, does not owe any extra-contractual fiduciary duty to its franchisees, Plaintiffs' regurgitated argument apparently

11

asks this Court to simply change its mind in contravention of well-established law and the law of this case. MTD Tr. at 34:8–14 ("In the end, plaintiffs give no reason why McDonald's was under an obligation to disclose certain information. In other words, folks, you have a franchisor-franchisee relationship. It doesn't create a fiduciary relationship. There are no facts in the relationship, according to the complaint, that would give rise to an overarching duty to disclose."); *Siemer v. Quizno's Franchise Co. LLC,* No. 07 C 2170, 2008 WL 904874, at *7 (N.D. Ill. Mar. 31, 2008); *Oil Exp. Nat., Inc. v. Burgstone*, 958 F.Supp. 366, 370 (N.D. Ill. 1997); *see also, Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988) ("the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.") (cleaned up); *Jarrard v. CDI Telecommunications, Inc.,* 408 F.3d 905, 912 (7th Cir. 2005) ("[t]he doctrine 'is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter.'") (quoting *Evans v. City of Chi.,* 873 F.2d 1007, 1014 (7th Cir. 1989)).

On the merits, Plaintiffs point the Court to the allegations in the SAC suggesting that their fraudulent concealment claims "arise out of an extracontractual duty that McDonald's undertook when it purposefully cultivated a special relationship of trust and confidence with black franchisees." SAC ¶¶ 6, 7, 702. Despite Plaintiffs' attempt to distinguish themselves from the typical picture of a franchisor-franchisee relationship using inapposite authority, it remains that no extracontractual duty exists. Opp. at 36–37 (analogizing the franchisor-franchisee relationship to a church-parishioner or Boy Scouts-member relationship); MTD Tr. at 34:8–14. Further, there can be no extracontractual duty where, as here, the terms of the Franchise Agreement expressly disavow the existence of any such relationship. MTD Tr. at 32:8–11 (quoting *Ocean Tomo v. PatentRatings, LLC*, 375 F. Supp. 3d 915, 930 (N.D. Ill. 2019) ("A claim of fraudulent inducement cannot be based on an alleged

12

misrepresentation that is expressly disclaimed by the terms of the contract")). Nonetheless, rather than utilizing the opportunity the Court gave them to salvage their fraudulent inducement claim, Plaintiffs double-down on their argument. It, again, fails.

## CONCLUSION

As discussed in detail herein, Plaintiffs have again failed to cure the deficiencies in their pleading. By continuing to allege a broad, complex intentional discrimination scheme without connecting the dots, they have confirmed that this Court was correct in dismissing the Amended Complaint. Dismissal of the Second Amended Complaint, with prejudice, is now warranted.

Dated: July 14, 2023

Respectfully submitted,

/s/ *Amy C. Andrews*

Patricia Brown Holmes
Amy Curtner Andrews
Mary A. Laird
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
pholmes@rshc-law.com
aandrews@rshc-law.com
mlaird@rshc-law.com

Ariel Schepers Wilson
RILEY SAFER HOLMES & CANCILA LLP
121 W. Washington Street, Suite 402
Ann Arbor, Michigan 48104
(734) 773-4900
awilson@rshc-law.com

Loretta E. Lynch (*pro hac vice*)
Susanna M. Buergel (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(202) 373-3000
lelynch@paulweiss.com

sbuergel@paulweiss.com

*Counsel for Defendants*