**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-5132 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| McDONALD'S USA and | ) | |
| McDONALD'S CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Ralph King and dozens of other black franchisees sued McDonald's, alleging pervasive race discrimination. They claim that McDonald's encouraged them to buy struggling stores in bad neighborhoods. And then, after the black franchisees bought the restaurants, McDonald's allegedly treated them unfavorably compared to white franchisees.

Collectively, King and the 30 other plaintiffs brought a whopping 93 claims against McDonald's. McDonald's moved to dismiss the second amended complaint.

For the reasons that follow, the motion to dismiss is granted in part and denied in part.

**Background**

The procedural history of this case has a few wrinkles, to put it mildly. This Court has on its docket two other cases against McDonald's involving black franchisees. *See Manning v. McDonald's*, 23-cv-210 (N.D. Ill.); *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.). They involve similar claims about franchisees' experiences with McDonald's. And two of the cases share a common origin story.

The evolution of the case began with the filing of the complaint in the *King* case (which was formerly called the *Crawford* case). The complaint included four counts: (1) race discrimination when making, performing, enforcing, and terminating contracts in violation of section 1981; (2) breach of contract; (3) fraudulent inducement; and (4) a request for punitive damages. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1).

The complaint included wide-ranging allegations about discrimination against black franchisees. McDonald's allegedly steered Plaintiffs into purchasing underperforming restaurants in crime-ridden areas, and did so based on false pretenses. And then, McDonald's treated black franchisees worse than white franchisees, by offering less support and making

greater demands. In a nutshell, McDonald's allegedly set black franchisees up to fail, and denied them equal opportunity to succeed. And then, it showed them the door.

Plaintiffs made allegations about discriminatory conduct over a span of decades, so the statute of limitations became a big issue. Plaintiffs filed the complaint on August 31, 2020, but they entered into a tolling agreement with McDonald's on June 8, 2020. As a result, June 8, 2020, is an important date for the statute of limitations.

Plaintiffs later filed an amended complaint on November 16, 2020, and dropped the request for punitive damages as a freestanding count. The first amended complaint had three counts: (1) race discrimination involving contracts in violation of section 1981; (2) breach of contract; and (3) fraudulent inducement. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30).

McDonald's moved to dismiss, based largely on the statute of limitations. On September 22, 2022, this Court delivered an oral ruling granting the motion to dismiss. *See* 9/28/22 Oral Ruling Tr., *King v. McDonald's*, No. 20-cv-5132 (N.D. Ill.) (Dckt. No. 68).[1] But this Court granted leave to amend, and plaintiffs later filed a second amended complaint on December 16, 2022.

Actually, they filed *two* second amended complaints. Plaintiffs decided to split between two different law firms. Some plaintiffs went with one law firm, and a second group of plaintiffs went with a different law firm.

Each group of plaintiffs filed different versions of the "second amended complaint" on the same docket. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 78); Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 79). So, a single case had two complaints, and each pleading claimed the mantle and called itself the second amended complaint.

A single case can't have more than one operative complaint at any given time. So this Court severed the case, and split it in two. *See* 1/11/23 Order, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 83). That action created the *King* case and the *Manning* case. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.); *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.).

Separately, Mitchell McPherson filed a case of his own in 2023. *See McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.).

The punchline is that there are three pending cases, including the *King* case (20-cv-5132), the *Manning* case (23-cv-210), and the *McPherson* case (23-cv-2913). *King* and *Manning* started out together (in 2020), and *McPherson* came later (in 2023).

---

[1] That transcript is captioned as the *Crawford* case, but that's the old name for the *King* case. *See* 1/11/23 Order, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 83) ("The case is hereby severed. The *King* Complaint will stay put and remain with this case number (20-cv-5132). The *Manning* Complaint will have a new case number. The Court directs the Clerk's Office to open a new case, file the *Manning* Complaint (Dckt. No. 78 ) under that new case number, and designate the cases as related.").

The *King* Plaintiffs and the *Manning* Plaintiffs started out at the same place in the original complaint and in the first amended complaint. But they ended up in different places in their respective second amended complaints.

The *King* Plaintiffs brought three claims in the second amended complaint: (1) race discrimination involving contracts under section 1981; (2) race discrimination involving property under section 1982; and (3) fraudulent concealment. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 79).

But the *Manning* Plaintiffs branched out and filed 10 claims in the second amended complaint: (1) race discrimination involving contracts under section 1981; (2) pattern-or-practice race discrimination involving contracts under section 1981; (3) retaliation involving contracts under section 1981; (4) race discrimination involving the leasing of property under section 1982; (5) pattern-or-practice race discrimination involving the leasing of property under section 1982; (6) retaliation involving the leasing of property under section 1982; (7) breach of contract; (8) fraudulent concealment; (9) tortious interference with prospective economic advantage; and (10) unjust enrichment. *See* Second Am. Cplt., *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.) (Dckt. No. 2).

Collectively, the cases haul a heavy payload. The *Manning* case has 48 plaintiffs. The *King* case has 31 plaintiffs. And the *McPherson* case involves only one plaintiff. That's 80 plaintiffs.

Each plaintiff brought multiple claims, too. For example, Ralph King brought three claims, and so did each of the other 30 plaintiffs in the *King* case. That's 93 claims. The *Manning* case involved an even greater payload. Each of the 48 plaintiffs in the *Manning* case brought 10 claims (each), for a total of 480 claims.

Digesting the complaints was no small task. The second amended complaint in *King* is 132 pages long, and contains 836 paragraphs. The second amended complaint in *Manning* is 158 pages long, and contains 716 paragraphs. The *McPherson* complaint is 31 pages long.

As an aside, the *King* complaint pushed – if not crossed – the line of what's acceptable and manageable under the Federal Rules. The complaint is over 130 pages long, and contains many hundreds of paragraphs. It contains more paragraphs than the Gettysburg Address contained *words*, by a wide margin. Even the stiffest cup of coffee cannot get a reader through a complete read without an intermission, and maybe a refill.

Every district court judge in the country has the same favorite word in the Federal Rules of Civil Procedure: "short." Rule 8 says that a complaint should be "short." *See* Fed. R. Civ. P. 8(a)(2). That rule exists for good reason. Brevity reduces costs, saves time, preserves judicial resources, and promotes the purpose of notice pleading.

Length has significant downsides. At some point, lengthy complaints serve too much to digest, and leave a throw-everything-at-the-wall-and-see-what-sticks aftertaste. A lengthy complaint makes one wonder if maybe, just maybe, a plaintiff is attempting to flood the zone,

and get to the next stage of litigation by overwhelming everyone with the sheer volume of the allegations.

There's an old saying that quantity has a quality all to its own. Maybe the flipside is true, too, especially in litigation. At some point, a long brief is worse than a short brief. And a long complaint might be worse for everyone.

Even so, there are countervailing considerations, too. A complaint must contain enough facts to give rise to a plausible inference, and cannot rest on labels and conclusions. Rule 9(b) also raises the bar and requires particularity for fraud claims, too. And here, Plaintiffs allege fraudulent concealment. It's hard to write a short complaint that tells 31 separate stories.

The *King* complaint also pushed the boundaries when it comes to joinder. There are limits on the number of plaintiffs who can fit in one case. It's reminiscent of the old game of seeing how many people can fit in a phone booth. At some point, you hit a wall, and stuffing anything more into one space becomes completely impracticable.

The *King* complaint contains 31 plaintiffs. That's getting close to the zone of what's acceptable for a class action. *See Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement."); Rubenstein, *Newberg on Class Actions*, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

Even so, any attempt to bring this case on a class-wide basis wouldn't have gone very far. The case isn't conductive to a class action, as even a cursory read of the complaint reveals. Each plaintiff has a unique story to tell, and the differences jump off the page. To be sure, there are some similarities and common questions. But if push came to shove, deciding the question of predominance wouldn't have consumed a lot of judicial resources.

Severance is a possibility (if not inevitable if the case makes it to trial). But severing the 31 plaintiffs into 31 freestanding cases at the motion-to-dismiss stage would have made things worse, not better. Deciding one big monster-sized motion is probably better than deciding 31 motions. Opening 31 cases doesn't feel like a time-saver.

Overall, the complaint is long, and the number of plaintiffs is high. But that's how it goes, and that's why this Court makes the little bucks. So this Court takes the complaint as it finds it, and dives in.

McDonald's filed a motion to dismiss in each case. There was a lot of ground to cover, given the number of plaintiffs, the number of claims, and the volume of pages.

This Court had to address each claim by each of the 31 plaintiffs one-by-one. Worse yet, the complaint includes allegations that stretch back decades, raising big questions about the statute of limitations. So, for many of the claims, this Court had to address two questions: Is the claim timely? And does it state a claim?

This Court elected to tackle the project by addressing the motion to dismiss the complaint in *McPherson* first. After all, that case involves only one plaintiff. The idea was to issue a ruling in *McPherson*, and then use that ruling to winnow down the claims (as necessary) in the other two cases.

On March 27, 2026, this Court issued a 59-page ruling in the *McPherson* case, granting in part and denying in part the motion to dismiss. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Specifically, this Court dismissed as untimely part of the differential-treatment claim under section 1981 (Count I) and under section 1982 (Count III). This Court also dismissed as untimely part of the pattern-or-practice discrimination claim under section 1981 (Count II) and under section 1982 (Count IV). This Court largely dismissed the breach-of-contract claim (Count V). And finally, this Court dismissed the tortious interference claim (Count VI).

The Court then convened a hearing with the parties and discussed the path forward. This Court explained that it planned to apply the rulings in *McPherson* to the claims in *King* and in *Manning*. *See* 4/28/26 Order, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 131) ("As discussed at the hearing, this Court recently issued a ruling in *McPherson* that granted in part and denied in part Defendants' motion to dismiss *McPherson's* complaint. That ruling will go a long way toward resolving the motion to dismiss in this case, too, because the Plaintiffs raised similar claims, and the Defendants made similar arguments, in both cases. The principles that this Court adopted in its motion to dismiss ruling in *McPherson* will equally apply to the case at hand (to the extent that the claims are the same, anyway).").

In particular, this Court called attention to five overarching principles from *McPherson* that apply to *King* and to *Manning*, too. *Id.*

First, any individual pattern-or-practice claims are dismissed. *Id.* In *McPherson*, this Court ruled that individuals cannot bring pattern-or-practice claims. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43). A few months later, in a different case, the Seventh Circuit reached the same conclusion. *See Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026) ("The district court correctly recognized that once it had denied Plaintiffs' motion for class certification, Plaintiffs could no longer maintain their *Teamsters* claims. *Teamsters* makes clear that a pattern and practice claim is conventionally brought as a class action.").

Second, the statute-of-limitations analysis from *McPherson* applies to any differential-treatment claims under section 1981. Specifically: (1) the claims are dismissed to the extent that they involve pre-contract-formation conduct that took place more than two years before the filing of the complaint; and (2) the claims are dismissed to the extent that they involve post-contract-formation conduct that took place more than four years before the filing of the complaint. *See* 4/28/26 Order, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 131).

Third, the statute-of-limitations analysis from *McPherson* applies to any differential-treatment claims under section 1982. Specifically, the section 1982 claims are dismissed to the

extent that they involve either pre-contract conduct or post-contract formation conduct that took place more than two years before the filing of the complaint. *Id.*

Fourth, in *McPherson*, this Court held that the continuing violation doctrine and equitable tolling did not apply to Plaintiff's untimely allegations under section 1981 or section 1982, because *McPherson's* allegations involved discrete acts of discrimination. The same principle applies in this case too, to the extent that Plaintiffs in this case seek to apply those doctrines based on discrete acts. *Id.*

Fifth, any breach-of-contract claims based on section 12 or section 15 of the Franchise Agreement are dismissed, assuming that each of the Plaintiffs made the same claim under the same provisions (unless one of the other Plaintiffs invokes different contractual language in those sections of the Franchise Agreement). But a claim for breach of contract under section 3 of the Franchise Agreement may survive, as long as Plaintiffs' allegations fall within Illinois's 10-year statute of limitations (unless there is some other flaw with the claim).[2] *Id.*

The Court directed the parties to meet and confer about the applicability of *McPherson*. And in particular, this Court directed the parties to file a joint statement about the impact that *McPherson* has on the claims at issue in *King* and in *Manning*.

The parties later filed those joint statements in the *King* case and in the *Manning* case. *See* Joint Submission, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 138); Joint Submission, *Manning v. McDonald's*, 23-cv-210 (Dckt. No. 72). The parties submitted a helpful chart, and went plaintiff-by-plaintiff, and claim-by-claim.

The parties reached an agreement on the viability of many of the claims in light of the ruling in *McPherson*. For example, the parties agreed that, after applying *McPherson*, the section 1982 claims for 23 of the 31 Plaintiffs were untimely. *See* Joint Submission, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 138) (agreeing that the section 1982 claims by Keristin Holloway, Gloria Holloway, George Jones, Jane Jones, Arthur Scott, Yvonne Knox, Michael Simon, John Mason, George Gipson, Bonnie Gipson, Kenneth Nelson, Victor Bruce, Faye Hobley, Paul Hoskins, Michele Hoskins, Lewis Anderson, Hayes Ferrell, Joyce Mance-Roan, Gary Roan, LeRoy Walker, Jr., Philip Douglas, Darryl Umphries, Bernard Saffold were untimely).

But the parties disagreed about some of the claims, too. In particular, the parties disagreed about whether equitable tolling or the relation-back doctrine applies.[3]

---

[2] That principle doesn't apply to the *King* Plaintiffs, because they did not allege a breach-of-contract claim.

[3] On that issue, each side included the same footnote 21 times (*see* footnotes 3, 4, 8, 12, 16, 17, 24, 26, 29, 31, 37, 39, 44, 48, 50, 53, 55, 58, 61, 64, 68). Taking a step back, the parties went footnote-happy in their Joint Submission. The parties included 70 footnotes in a 53-page document. Many of the footnotes were identical, which accomplished little except making eyes glaze over. For example, the parties let this Court know, over and over again, that they disagreed about what they were supposed to cover in the Joint Submission. The parties made that point again and again, saying the same thing in footnotes 6, 9, 13, 15, 18, 23, 25, 27, 30, 32, 35, 38, 40, 43, 45, 47, 49, 51, 54, 56, 59, 62, 65, & 69.

On September 21, 2026, this Court issued an order granting in part and denying in part the motion to dismiss in the *Manning* case. *See* 9/21/26 Order, *Manning v. McDonald's*, 23-cv-210 (Dckt. No. 74).

That's the backstory. And now, the Court will complete the work on the motion to dismiss in the *King* case. This Court will go plaintiff-by-plaintiff, and claim-by-claim, and will issue a ruling on all remaining claims.

This Order will draw heavily on the joint submission by the parties about the impact of the ruling in *McPherson*. *See* Joint Submission (Dckt. No. 142). Any interested reader should give a close read to that joint submission. This Court will also borrow heavily from its ruling in the companion *Manning* case.

To spare the reader, this Court will include most of the details and the analysis in the discussion of the claim by Plaintiff King. The rulings for the other Plaintiffs will be shorter (by design), and will rely in large part on that analysis.

In the end, the complaint was too much, and too little.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted; brackets in original).

A complaint must overcome the "plausibility standard," which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal*, 'the plausibility

standard is not akin to a probability requirement.'") (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets in original).

A higher pleading standard applies to complaints that allege fraud. Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). A plaintiff must allege the "who, what, when, where, and how" of the circumstances surrounding the fraud. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citation omitted); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009).

The statute of limitations is an affirmative defense, and a complaint does not have to plead around affirmative defenses. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But a complaint can defeat itself, and a plaintiff can plead himself out of court.

District courts routinely consider the statute of limitations at the motion-to-dismiss stage when the complaint itself reveals that a claim is untimely. "[A] district court may dismiss on statute-of-limitations grounds where it is 'clear from the face of the amended complaint that it is hopelessly time-barred.'" *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 562 (7th Cir. 2026); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009 ("[T]he statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'").

**Analysis**

Before getting into the specifics, it is worth a brief pause to see the big picture, and appreciate the hill that the complaint has to climb.

The complaint basically alleges that McDonald's engaged in a complex, nationwide, far-reaching, decades-long scheme to undermine black franchisees and remove them from the McDonald's system. The allegations have the feel of a vast nationwide conspiracy.

"The required level of factual specificity rises with the complexity of the claim." *See McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

As another court put it in a similar case, "[a] more complex case will require more detail. To put it mildly, the Plaintiffs have alleged a massive, complex case of discrimination commencing decades ago, extending across the nation, that has personally impacted hundreds of African-American McDonald's franchisees." *See Byrd v. McDonald's USA, LLC*, 2021 WL 2329369, at *4 (N.D. Ill. 2021) (Leinenweber, J.). The same holds true here.

## I. Ralph King (Plaintiff #1)

King entered McDonald's system on February 1, 1990, and exited McDonald's system on February 1, 2019. He brings three claims.

**Count I** is a race discrimination claim about contracts under section 1981. The statute of limitations is two years for pre-contract-formation conduct, and four years for post-contract-formation conduct. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

In response to the motion to dismiss, Plaintiffs argued that the claims were timely based on the doctrines of a continuing violation and equitable tolling. *See* Pls.' Resp., at 17–21 (Dckt. No. 109).

This Court concludes that the continuing violation doctrine and equitable tolling cannot save the untimely claims, for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

In the Joint Submission, Plaintiffs point to ten paragraphs of the second amended complaint for the notion that "later discovery of and/or evidence regarding the alleged discriminatory pattern may support Plaintiffs' tolling and concealment allegations." *See* Joint Submission, at 3 (Dckt. No. 142) (citing paragraphs 173 to 182 of the second amended complaint).

Plaintiffs' theory comes in two parts. Part of the theory is about the National Black McDonald's Operators Association. The other part of the theory is about a lawsuit filed by black executives of McDonald's.

Plaintiffs allege that the National Black McDonald's Operators Association sent an email to its members on December 7, 2020, saying that business was good and that rent was below market. *See* Second Am. Cplt., at ¶ 173 (Dckt. No. 79). At a meeting, the President of the Association talked about the focus on growing the organization by getting the children and spouses of franchisees into the system. *Id.* at ¶ 174.

Plaintiffs allege that the Association did not tell the full story. The President did not present any "hard numbers" about "actual rent." *Id.* at ¶ 175. He also did not present data about the number of black franchisees who were "ineligible for growth and rewrite."[4] *Id.* at ¶ 176.

[4] A "rewrite" apparently means the renewal of the franchise agreement. *See* Second Am. Cplt., at ¶ 2(h) (Dckt. No. 79).

The President also did not explain why the children of franchisees were getting approved for "dated" stores. *Id.*

Meanwhile, McDonald's "ignored" requests for information, including "actual data" on rent improvements." *Id.* at ¶ 177.

As Plaintiffs see things, McDonald's used the National Black McDonald's Operators Association to mislead black franchisees. "McDonald's used the NBMOA as a conduit to actively mislead and fraudulently conceal its continuing systematic pattern and practice of discriminatory acts from its Black franchisees, including Plaintiffs." *Id.* at ¶ 178.

The other part of the theory involves a lawsuit brought by two "corporate executives" of McDonald's. Those two executives filed a lawsuit "alleging years of discriminatory treatment of Black franchisees by the McDonald's system." *Id.* at ¶ 180. Specifically, the executives complained that the "Big Bolder Vision 2020" program by McDonald's had a negative impact on black franchisees. *Id.*

Those allegations do not come close to laying the foundation for the continuing violation doctrine, or equitable tolling.

The continuing violation doctrine is about claim accrual, and equitable tolling is about (you guessed it) tolling a claim that has already accrued. The continuing violation doctrine is about starting the clock, and equitable tolling is about pausing the clock.

The "continuing violation" doctrine "is a doctrine governing accrual," not a "tolling doctrine." *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). "[W]hat exactly is a 'continuing violation'? A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.*

The continuing violation doctrine involves delaying the accrual of claims "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). The doctrine is "a special accrual rule under which a claim accrues not just once but repeatedly as a defendant continually wrongs a plaintiff." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 823 (7th Cir. 2022).

A plaintiff must point to "[d]eeds that are not themselves violations of law" but "become actionable [when] they add up." *See Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir. 2013) (Easterbrook, J., concurring). The "continuing violation doctrine . . . does not apply to a 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (quoting *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005)); *see also Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014) ("Each discrete act – something wrongful independent of other events – carries its own period of limitations.").

A "plaintiff seeking redress for a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are 'plausibly or sufficiently related."' *See Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

A cumulative violation arises "when it is not immediately apparent that the law is being violated." *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Some discrete acts "are easy to identify," like "termination, failure to promote, denial of transfer, or refusal to hire." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Other discrete acts might be less obvious. *See, e.g., Deibel v. Hoeg*, 998 F.3d 768, 771 (7th Cir. 2021) (holding that a "freezeout" of a minority investor constituted a discrete act).

The continuing violation doctrine does not apply to the information from the National Black McDonald's Operators Association, and the filing of a lawsuit by two corporate executives. The doctrine is about cumulative wrongdoing over a period of time, not the discovery of new information later.

What's more, most of the allegations in the complaint describe discrete acts. And discrete acts cannot get the benefit of the continuing violation doctrine.

Equitable tolling does not apply, either. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam).

Equitable tolling "pauses the running of [] a statute of limitations." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Equitable tolling is an "extraordinary remedy that is rarely granted." *See Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (cleaned up); *see also Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) ("To be sure, equitable tolling is rare."); *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly."). The doctrine is reserved for "unusual circumstances." *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam); *see also Wallace v. Kato*, 549 U.S. 384, 396 (2007).

The doctrine applies when the plaintiff "cannot obtain the information necessary to decide whether [their] injury is due to wrongdoing." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). The question is whether "a reasonable man in [the plaintiff's] position would not have known . . . that he had been injured in possible violation" of the law. *Id.*

The burden rests on the plaintiff to lay the foundation for equitable tolling. *See Herrera*, 8 F.4th at 499 ("[I]t is the plaintiff's burden to show 'he diligently pursued the claim and some extraordinary circumstances prevented him from filing his complaint within the statute of

limitations.'"). "When invoking the doctrine of equitable tolling, a plaintiff must plead specific facts to support the court's conclusions that she exercised due diligence and that the statute of limitations must be tolled." *See Zalesiak v. UnumProvident Corp.*, 2007 WL 4365345, at *7 (N.D. Ill. 2007); *see also Coleman v. Gaetz*, 2010 WL 3802360, at *5 (N.D. Ill. 2010).

Plaintiffs cannot make that showing here. They operated McDonald's restaurants for years and allege that McDonald's treated them unfairly along the way. They claim that the company lured black franchisees into buying unprofitable stores in bad neighborhoods, refused to help them succeed, inspected their stores more frequently, and treated them unfavorably in a number of ways. Plaintiffs knew those facts when they happened.

The treatment that they received from McDonald's is not a recent discovery. Quite the opposite – Plaintiffs experienced it along the way, in real time.

Plaintiffs claim they did not realize they were being treated discriminatorily until January 2020, when two former McDonald's employees sued the company. In other words, Plaintiffs allegedly experienced years (or even decades) of conduct they considered unfair without suspecting that race might have been a factor.

That notion is difficult to reconcile with Plaintiffs' own allegations. Plaintiffs allege, for example, that McDonald's withheld approval for store sales to black purchasers but not white purchasers. From that fact alone, a reasonable person in Plaintiffs' position could have concluded that "one possible explanation [for McDonald's conduct] was racial discrimination." *See Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 397 (7th Cir. 2000) (rejecting equitable tolling where the plaintiff "learned that [his employer] hired a white candidate," because that was enough information to know that "one possible explanation was racial discrimination").

Equitable tolling is "not a cure-all." *Id.* Equitable estoppel doesn't apply simply because a lightbulb goes off, and a plaintiff suddenly realizes for the first time that he might have a cause of action. "The lack of legal expertise is not a basis for invoking equitable tolling." *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008).

If equitable estoppel applied whenever a plaintiff belatedly realizes that he has a cause of action, then equitable estoppel would be the rule rather than the exception. It would stand the doctrine on its head.

Here, Plaintiffs believed that McDonald's was treating them unfairly. Maybe Plaintiffs did not contemplate a potential cause of action. But they knew enough facts to pursue a possible claim, if they wanted to bring one. That's enough to preclude equitable tolling.

Plaintiffs have made no showing that they diligently pursued a possible claim. The complaint alleges that McDonald's mistreated them over a span of years, but Plaintiffs did nothing to pursue a potential claim. No "extraordinary circumstance" stood in the way of bringing a claim in a timely manner. *See Pace*, 544 U.S. at 418.

To sum up, this Court concludes that the continuing violation doctrine and equitable tolling do not apply. The statute of limitations runs from the date of the tolling agreement on

June 8, 2020. A two-period applies to pre-contract-formation conduct, and a four-year period applies to post-contract-formation conduct.

Count I is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

As a reminder, the parties entered into a tolling agreement on June 8, 2020, and Plaintiffs filed the complaint in the *King* case (again, which was originally called the *Crawford* case) on July 10, 2020. The tolling agreement explains why the statute of limitations stretches back to June 8, 2016 (not July 10, 2016). That date is four years before the signing of the tolling agreement on June 8, 2020.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and October 1, 2019, when King left the system. The question is whether the complaint includes allegations that state a claim.

Section 1981(a) prohibits race discrimination when making, enforcing, and terminating contracts. The statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *See* 42 U.S.C. § 1981(a). The statute "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

To state a discrimination claim under section 1981, a plaintiff must allege that the defendant "had the intent to discriminate on the basis of race," and that "the discrimination concerned the making or enforcing of a contract." *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

A plaintiff "must plead that, but for his race, he would not have suffered the loss of a legally protected right to make and enforce a contract." *See Miao v. United Airlines, Inc.*, 164 F.4th 622, 625 (7th Cir. 2026). A plaintiff must "allege enough facts to allow for a plausible inference" that the defendant "impaired his right to enforce a contract because of race." *Id.* at 626; *see also Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").

Section 1981 only covers instances of purposeful discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). A plaintiff also must plead but-for causation. *See Comast*, 589 U.S. at 331–41.

Some cases also say that a plaintiff must allege that he "is a member of a racial minority." *See Pourghoraishi*, 449 F.3d at 756. But it's hard to see how that requirement could survive the Supreme Court's decision in *Ames v. Ohio Department of Youth Services*, 605 U.S. 303, 310 (2025).

After all, the statute protects everybody, and everyone has a race. "[E]veryone has a race, and in that sense, *everyone* is a member of a protected class. . . . Saying that someone is a member of a protected class doesn't say anything, because the circle of protection covers everyone. Asking if a person is a member of a protected class in a race-discrimination case isn't much better than asking if a person is a person." *See Reese v. Hub Group Inc.*, 2026 WL 558111, at *12 (N.D. Ill. 2026) (emphasis in original); *see also Galbreath v. Help at Home, LLC*, 2025 WL 919574, at *5 (N.D. Ill. 2025) ("By the look of things, the Seventh Circuit hasn't addressed a section 1981 claim and restated the element of membership in a racial-minority group since 2006 (in *Pourghoraishi*). Maybe someday the Seventh Circuit will give it another look.").

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and February 1, 2019, when King left the McDonald's system. Most of the allegations in the complaint predate that period, so they're untimely.

The complaint does contain some timely allegations. King alleges that McDonald's gave a pretexual reason (a refusal to install a play place) for its decision to block his attempt to buy a new store. *See* Second Am. Cplt., at ¶ 283 (Dckt. No. 79). That's not enough to raise a plausible inference of discriminatory intent.

King also alleges that he sold his store in 2017, and that McDonald's did not pay his asking price "because it wanted to sell Mr. King's Troost location with another restaurant that McDonald's built on Emanual Clever Boulevard together at a discounted price at Mr. King's expense." *Id.* at ¶ 284. That paragraph does not allege discrimination, let alone contain facts that could give rise to a plausible inference of discriminatory intent.

A plaintiff does not need to trot out all of the evidence to support a claim. A complaint does not need to prove a claim, but a complaint does need to "state[]" a claim and "show[] that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a), 8(a)(2); *see also* Fed. R. Civ. P. 12(b)(6).

You don't need to be from Missouri to know that *telling* someone that you have a claim is different than *showing* someone that you have a claim.

That standard is nothing to sneeze at. A complaint that is "speculative," "formulaic," "[t]hreadbare," or "conclusory" doesn't pass muster. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. A plaintiff must offer more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

A complaint must deliver "factual content," meaning "sufficient factual matter" to state a claim. *See Iqbal*, 556 U.S. at 678. A complaint doesn't do the job if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted; brackets in original). The "factual content" must allow the "reasonable inference" that the "defendant is liable for the misconduct alleged." *Id.* A "sheer possibility that a defendant has acted unlawfully" doesn't cut it. *Id.*

By design, the plausibility standard requires a district court to consider, at the motion-to-dismiss stage, what the plaintiff must prove at trial. "[T]he essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change. So, *to determine what the plaintiff must plausibly allege at the outset of a lawsuit*, we usually ask what the plaintiff must prove in the trial at its end." *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020) (emphasis added); *see also id.* at 341 ("To prevail, a plaintiff must initially *plead* and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.") (emphasis added).

Again, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

Here, the claim by King falls short of that standard. The complaint does not contain facts that could give rise to a plausible inference of a discriminatory intent. The allegations raise a "sheer possibility" of discrimination, which doesn't get over the bar and rise "above the speculative level." *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Overall, the complaint fails to include factual content that could give rise to a plausible inference that McDonald's discriminated against King on the basis of race in connection with contracts between June 8, 2016, and February 1, 2019. Count I is dismissed.

**Count II** is discrimination claim about leasing property under section 1982. A claim under section 1982 has a two-year statute of limitations.

Plaintiffs did not include a claim under section 1982 in the original complaint, or in the first amended complaint. Instead, Plaintiffs raised a section 1982 claim for the first time in the second amended complaint on December 16, 2022.

So, any claim is time barred for any conduct before December 16, 2020 (meaning two years before the filing of the second amended complaint on December 16, 2022), unless relation-back applies.

Under Rule 15(c)(1)(B), an amended complaint relates back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) "relaxes, but does not obliterate, the statute of limitations." *See Mayle v. Felix*, 545 U.S. 644, 659 (2025).

The central inquiry under Rule 15(c) is whether the original complaint "gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). "Even 'significant' changes to a complaint or to a class definition can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

"A new legal theory may therefore relate back if it is tethered to the same core of operative facts." *See Elliott v. Village of Wayne*, 2026 WL 705746, at *3 (N.D. Ill. 2026). "Even where an amendment 'invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted,' relation back is in order '[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts.'" *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023) (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).

In the original complaint, Plaintiffs alleged that McDonald's "forc[ed] Plaintiffs into substandard, low-profit stores in predominantly Black communities with high crime rates." *See* Cplt., at ¶ 8, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1). Plaintiffs alleged that McDonald's prevented them from pursuing "opportunities in affluent white communities." *Id.* at ¶ 11.

Plaintiffs repeated that theme in Count II of the second amended complaint, which raised a claim under section 1982 for the first time. Plaintiffs allege that McDonald's discriminated against them in the leasing of property, by offering black franchisees low-volume stores in unfavorable locations.[5] *See* Second Am. Cplt., at ¶ 687 (Dckt. No. 79).

On this issue, the allegations in the second amended complaint mirror the allegations in the original complaint. From day one, Plaintiffs have alleged that McDonald's discriminated against them by preventing them from acquiring stores in favorable neighborhoods, and by offering them stores in unfavorable neighborhoods.

In the Joint Submission, McDonald's opposes relation back because the original complaint framed the issue in terms of "contract rights," and the second amended complaint frames the issue in terms of "property rights." *See* Joint Submission, at 4 n.4 (Dckt. No. 142).

---

[5] The *Manning* Plaintiffs offered a broader theory of a claim under section 1982. The *Manning* Plaintiffs also alleged that McDonald's violated section 1982 by denying requests to sell their restaurants and transfer their interest in real property to the buyers of their choosing. *See* Second Am. Cplt., at ¶ 789, *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.) (Dckt. No. 2). By the look of things, the *King* Plaintiffs (unlike the *Manning* Plaintiffs) do not expressly allege that McDonald's violated section 1982 by interfering with a sale of the stores to the preferred buyers of the black franchisees. Count II of the second amended complaint does state that McDonald's has discretion over the "buyer upon exit," but that's about it. *See* Second Am. Cplt., at ¶ 686, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 79). There's no reference in Count II (meaning the section 1982 claim itself) about *selling* the stores. Even so, the second amended complaint includes hundreds of paragraphs in the facts section, and a number of those paragraphs allege that McDonald's prevented Plaintiffs from selling their stores to their preferred buyers. So, this Court will give Plaintiffs the benefit of the doubt, and will assume that Plaintiffs also allege that McDonald's violated section 1982 by interfering with a sale of their stores. That allegation appeared in the original complaint, so it relates back. Even so, the section 1982 claim is untimely for 23 of the 31 Plaintiffs. The claim is timely for the other Plaintiffs, but as explained below, the allegations do not state a claim.

True, the legal theory may not be the same. Plaintiffs didn't invoke section 1982 in the original complaint, and did not focus on leases as opposed to contracts. But relation back depends on the facts, not the legal theory. *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023).

This Court concludes that the discrimination claim about leasing under section 1982 relates back to the filing of the original complaint (actually, to the signing of the tolling agreement on June 8, 2020). The allegations about leasing discrimination arose out of the same "conduct, transaction, or occurrence" set out in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

Any claim about leasing discrimination is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Section 1982 protects the equal right to "inherit, purchase, lease, sell, hold, and convey real and personal property." *See* 42 U.S.C. § 1982. "Because sections 1981 and 1982 are derived from the first section of the Civil Rights Act of 1866 and share a common purpose, federal courts construe [s]ection 1981 and 1982 claims in tandem." *See Parvati Corp. v. City of Oak Forest*, 2012 WL 957479, at *7 (N.D. Ill. 2012) (St. Eve, J.); *see also Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Runyon v. McCrary*, 427 U.S. 160, 171 (1976).

To state an intentional-discrimination claim under section 1982, a plaintiff must allege that the defendant intentionally discriminated against him on the basis of race concerning property, and that there was but-for causation connecting the plaintiff's race to the alleged discrimination. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** is a fraudulent concealment claim. The statute of limitations is five years. *See* 735 ILCS 5/13-215.

Plaintiffs raised the fraudulent concealment claim for the first time when they filed the second amended complaint on December 16, 2022. So, the claim is untimely for any conduct that took place before December 16, 2017, unless relation back applies.

Again, under Rule 15(c)(1)(B), an amended complaint relates back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B).

In a nutshell, the amended complaint alleges that McDonald's put itself in a position of trust over the franchisees by steering them into unfavorable locations, and by "promising to work and partner with them" through the National Black McDonald's Operators Association. And then, McDonald's concealed information from them about the relative financial performance of black franchisees and white franchisees. The concealment largely took place at the meetings of the National Black McDonald's Operators Association. *See* Second Am. Cplt., at ¶¶ 699–710 (Dckt. No. 79).

That set of allegations seems different than the allegations in the original complaint. In that pleading, Plaintiffs did not allege that McDonald's used the National Black McDonald's Operators Association to conceal information from black franchisees.

Even so, this Court will assume without deciding that relation back applies. For the sake of argument, this Court will assume that the fraudulent concealment claim relates back to the date of the execution of the tolling agreement on June 8, 2020. So, for the sake of argument, the claim is timely for any conduct after June 8, 2015.[6]

"In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *See Toulon v. Continental Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017).

"The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff.'" *See Squires-Cannon v. Forest Preserve Dist. of Cook County*, 897 F.3d 797, 805 (7th Cir. 2018).

Here, Plaintiffs allege that McDonald's assumed a position of trust and confidence over black franchisees by "steering them to financially non-viable, low income, low volume locations with higher operating costs." *See* Second Am. Cplt., at ¶ 703 (Dckt. No. 79). Plaintiff also alleges that McDonald's "assumed a position of trust and confidence by promising to work and partner with them, through the NBMOA [the National Black McDonald's Operators Association], to assist them in overcoming the effects of its racist treatment of them" and to "achieve financial parity" with white owner-operators. *Id.* at ¶ 704.

Plaintiffs believe that McDonald's "assumed a legal duty" by promising to "fully disclose to Black franchisees system-wide information," so that black franchisees could evaluate the "progress toward achieving financial parity" with white franchisees. *Id.* at ¶ 705.

Plaintiffs allege that McDonald's breached that duty by withholding information about the relative performances of white franchisees and black franchisees. McDonald's "concealed material facts from its Black franchisees regarding the growing gap in the net income earned by White franchisees and Black franchisees within the McDonald's franchise system." *Id.* at ¶ 699.

---

[6] True, some Plaintiffs joined the case later, so a different statute of limitations would apply to them. But it doesn't change the outcome, so this Court is setting that fact aside.

The concealment allegedly took place from day one, meaning shortly after each of the Plaintiffs became franchisees. *Id.* at ¶ 708 ("From the commencement of the franchise terms, Plaintiffs attended and personally participated in all NBMOA meetings, reviewed, and relied upon all misleading cash flow information McDonald's disseminated to the NBMOA.").

The fraudulent concealment claim fails, for at least five reasons.

First, the complaint is untimely to the extent that it alleges that McDonald's breached a duty before Plaintiffs became franchisees. The claim is untimely for any conduct before June 8, 2015. But all of the Plaintiffs became franchisees before 2015.

Second, the complaint fails to the extent that it alleges that McDonald's breached a duty to disclose before Plaintiffs became franchisees. A party to a contract does not have a freewheeling duty to disclose information to the other party during contract negotiations. McDonald's had no duty to disclose information about the relative financial performance of black franchisees and white franchisees before Plaintiffs signed franchise agreements.

Third, under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008) ("'It is well established under Illinois law that parties to a contract, including franchise contracts, do not owe a fiduciary duty to one another.'"); *see also Hickory Hills Foodmart, Inc. v. Equilon Enterprises, LLC*, 2023 WL 4273664, at *6 (N.D. Ill. 2023) ("Courts in this district are reluctant to recognize a fiduciary duty owed to a franchisee by a franchisor."); *Sparano v. Southland Corp.*, 1995 WL 470267, at *4 (N.D. Ill. 1995) ("'A franchise relationship is inherently a business relationship, not a fiduciary relationship,' because while each party to a franchise relationship serves the other's interests to some extent, 'each also quite properly [seeks] its own interest.'") (citation omitted).

"Contract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper. That philosophy may animate the law of fiduciary obligations but parties to a contract are not each other's fiduciaries – *even if the contract is a franchise*." *See Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) (emphasis added).

Plaintiffs claim that McDonald's assumed a duty by "promising to fully disclose" financial information "to Black franchisees." *See* Second Am. Cplt., at ¶ 705 (Dckt. No. 79). But that alleged promise took place in the context of the franchisor-franchisee relationship. A statement made in the ordinary course of the franchisor-franchisee relationship cannot give rise to a fiduciary duty because a franchisor owes no fiduciary duty to the franchisee.

Fourth, the franchise agreement forecloses any claim about misrepresentations or omissions about the profitability of the restaurants. "No representation has been made by McDonald's as to the future profitability of the Restaurant." *See* Franchise Agreement, at § 28(c) (Dckt. No. 30-1).

Fifth, a plaintiff must satisfy the heightened pleading standard of Rule 9(b) when bringing a fraudulent concealment claim. *See Squires-Cannon*, 897 F.3d at 805. King has failed to allege the who, what, when, where, and how of the alleged fraud.

Instead, the allegations hover at a high level of generality. For example, the complaint refers to unnamed "executives" and "regional management." *See* Second Am. Cplt., at ¶ 701 (Dckt. No. 79) ("McDonald's affirmatively concealed this information, and misled Plaintiffs, by using its executives, regional management, and the NBMOA to disseminate misleading data regarding a de minimis cash flow gap between Black and White franchisees to conceal the real problem, which was the growing net income gap between Black and White franchisees.").

The complaint relies on unspecified meetings of the National Black McDonald's Operators Association, which took place at unknown times over a span of decades. "From the commencement of the franchise terms, Plaintiffs attended and personally participated in all NBMOA meetings, reviewed, and relied upon all misleading cash flow information McDonald's disseminated to the NBMOA." *Id.* at ¶ 708.

The complaint also gives a long list of alleged acts of concealment. *Id.* at ¶ 712. But the allegations sweep broadly and rely on generalities, such as "failing to conduct audits when requested by Plaintiffs," and "failing to provide accurate financial information regarding the return of investment for remodels during annual business reviews," and so on. *Id.* The list falls far short of the level of detail required by the heightened pleading standard of Rule 9(b).

Count III is dismissed.

## II. John Tillman (Plaintiff #2)

Tillman entered McDonald's system on February 1, 1990, and exited McDonald's system on February 1, 2019. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and February 1, 2019, when Tillman exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and February 1, 2019. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about closing their airport locations in 2015. *See* Second Am. Cplt., at ¶¶ 290–304 (Dckt. No. 79).

The complaint does contain some timely allegations. Tillman alleges that he purchased two stores in "economically disadvantaged neighborhoods" from another black franchisee.[7] *Id.* at ¶¶ 306–07. But the stores did not perform as well as he had hoped, despite their best offers. *Id.* at ¶ 308. That's not a claim.

Tillman alleges that McDonald's denied a request for rent relief during a period of road construction. *Id.* at ¶ 310. That allegation does not state a claim of race discrimination, either.

Tillman alleges that he decided to sell his stores because they were underperforming. In 2019, he sold the stores "at a significant undervaluation" to a white owner-operator recommended by McDonald's. *Id.* at ¶¶ 313–19. That's not a claim, either.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## III. Marcia Tillman (Plaintiff #3)

Tillman entered McDonald's system on February 1, 1990, and exited McDonald's system on February 1, 2019. She brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and February 1, 2019, when Tillman exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and February 1, 2019. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the

[7] The complaint does not reveal when those purchases took place. The Court assumes that they took place sometime after mid-2015, given where they appear in the complaint. So, the purchase of those locations might be timely, or might not be timely. This Court will give Plaintiff the benefit of the doubt.

allegations about closing their airport locations in 2015. *See* Second Am. Cplt., at ¶¶ 290–304 (Dckt. No. 79).

The complaint does contain some timely allegations. Tillman alleges that she purchased two stores in "economically disadvantaged neighborhoods" from another black franchisee.[8] *Id.* at ¶¶ 306–07. But the stores did not perform as well as she had hoped, despite their best offers. *Id.* at ¶ 308. That's not a claim.

Tillman alleges that McDonald's denied a request for rent relief during a period of road construction. *Id.* at ¶ 310. That allegation does not state a claim of race discrimination, either.

Tillman alleges that she decided to sell her stores because they were underperforming. In 2019, she sold the stores "at a significant undervaluation" to a white owner-operator recommended by McDonald's. *Id.* at ¶¶ 313–19. That's not a claim, either.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## IV. Keristin (Kurt) Holloway (Plaintiff #4)

Holloway entered McDonald's system on April 1, 1997, and exited McDonald's system on May 1, 2017. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and May 1, 2017, when Holloway exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and May 1, 2017. Most of the

---

[8] The complaint does not reveal when those purchases took place. The Court assumes that they took place sometime after mid-2015, given where they appear in the complaint. So, the purchase of those locations might be timely, or might not be timely. This Court will give Plaintiff the benefit of the doubt.

allegations in the complaint predate that period, so they're untimely. Examples include the allegations about buying their Houston stores in 2006, and about requesting financial relief in 2015. *See* Second Am. Cplt., at ¶¶ 321–26 (Dckt. No. 79).

The complaint does contain some timely allegations. Holloway alleges that he exited the McDonald's system in 2017, and that McDonald's required compliance with the ADA as a condition of approving the sale. Holloway alleges the previous owner was not required to address those same issues before selling. *Id.* at ¶ 330. That's not a claim. Holloway also alleges that he sold the store to a white owner-operator. *Id.* at ¶ 331. That's not a claim, either.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## V. Gloria Holloway (Plaintiff #5)

Holloway entered McDonald's system on April 1, 1997, and exited McDonald's system on May 1, 2017. She brings three claims.

Holloway was not a plaintiff in the original complaint filed in July 2020. Holloway joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and May 1, 2017, when Holloway exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and May 1, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about buying their Houston stores in 2006, and about requesting financial relief in 2015. *See* Second Am. Cplt., at ¶¶ 321–26 (Dckt. No. 79).

The complaint does contain some timely allegations. Holloway alleges that she exited the McDonald's system in 2017, and that McDonald's required compliance with the ADA as a condition of approving the sale. Holloway alleges the previous owner was not required to address those same issues before selling. *Id.* at ¶ 330. That's not a claim. Holloway also alleges that she sold the store to a white owner-operator. *Id.* at ¶ 331. That's not a claim, either.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## VI. George Jones (Plaintiff #6)

Jones entered McDonald's system in 1981 or 2004 (the parties disagree, but it makes no difference), and exited McDonald's system on December 17, 2019. He brings three claims.

Jones was not a plaintiff in the original complaint filed in July 2020. Jones joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 17, 2019, when Jones exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 17, 2019. Most of the allegations in the complaint predate that period, so they're untimely.

The complaint does contain some timely allegations. Jones alleges that McDonald's rejected requests for growth opportunities, without explanation, but allowed a white owner-operator to expand. *See* Second Am. Cplt., at ¶¶ 340–41 (Dckt. No. 79). That allegation does not contain enough factual content to give rise to a plausible inference of discriminatory intent. *See Miao*, 164 F.4th at 626 ("As we see it, there is nothing here, aside from conclusory allegations, to plausibly allege discrimination. . . . To survive a motion to dismiss, Miao needed to allege enough facts to allow for a plausible inference that United impaired his right to enforce a contract because of race. While the complaint provides a detailed account of what happened aboard United's aircraft, we can only speculate that race had anything to do with it.").

Jones alleges that he failed an inspection based on food safety, but McDonald's overlooked the shortcomings of a white owner-operator. *Id.* at ¶¶ 343–44. Jones also alleges that McDonald's criticized him in a business review in 2017 for not having a graduate of Hamburger University as a manager in each location, even though their son ran the store and was a graduate of Hamburger University. *Id.* at ¶ 346. That's not discrimination. And that's not enough to allege discriminatory intent, either.

Jones alleges that McDonald's allowed another owner-operator to open a nearby store, which negatively impacted his sales. *Id.* at ¶ 346. McDonald's denied a request for impact relief, too. Once again, that allegation falls short of alleging discrimination on the basis of race.

Jones alleges that he decided to sell a store in 2016, but McDonald's did not approve the sale because McDonald's wanted to give dibs to two white owner-operators. *Id.* at ¶ 349. Jones sold another store at a loss in 2018. *Id.* at ¶ 350. Once again, those allegations do not include enough factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## VII. Jane Jones (Plaintiff #7)

Jones entered McDonald's system in January, 1981, and exited McDonald's system on December 17, 2019. He brings three claims.

Jones was not a plaintiff in the original complaint filed in July 2020. Jones joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 17, 2019, when Jones exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 17, 2019. Most of the allegations in the complaint predate that period, so they're untimely.

The complaint does contain some timely allegations. Jones alleges that McDonald's rejected requests for growth opportunities, without explanation, but allowed a white owner-operator to expand. *See* Second Am. Cplt., at ¶¶ 340–41 (Dckt. No. 79). That allegation does not contain enough factual content to give rise to a plausible inference of discriminatory intent.

Jones alleges that she failed an inspection based on food safety, but McDonald's overlooked the shortcomings of a white owner-operator. *Id.* at ¶¶ 343–44. Jones also alleges that McDonald's criticized her in a business review in 2017 for not having a graduate of Hamburger University as a manager in each location, even though their son ran the store and was a graduate of Hamburger University. *Id.* at ¶ 346. That's not discrimination. And that's not enough to allege discriminatory intent, either.

Jones alleges that McDonald's allowed another owner-operator to open a nearby store, which negatively impacted her sales. *Id.* McDonald's denied a request for impact relief, too. Once again, that allegation falls short of alleging discrimination on the basis of race.

Jones alleges that he decided to sell a store in 2016, but McDonald's did not approve the sale because McDonald's wanted to give dibs to two white owner-operators. *Id.* at ¶ 349. Jones sold another store at a loss in 2018. *Id.* at ¶ 350. Once again, those allegations do not state a claim of race discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## VIII. Errol Service (Plaintiff #8)

Service entered McDonald's system on July 29, 1994, and exited McDonald's system on April 1, 2020. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 1, 2020, when Service exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 1, 2020. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about McDonald's wanting to close three of his stores in 2015. *See* Second Am. Cplt., at ¶ 356 (Dckt. No. 79).

The complaint does contain some timely allegations. Service alleges that he purchased a store from another black franchisee in 2016, but McDonald's took it away eight months later. *Id.* at ¶ 357. That's not enough to state a claim.

Service also alleges that McDonald's required him to remodel eight stores, but did not require white owner-operators to do the same level of remodeling. *Id.* at ¶ 358. That scant allegation is too cursory and conclusory to give rise to a claim. It falls short of alleging facts that could give rise to a plausible inference of discriminatory intent.

Service also alleges that he was denied eligibility for growth in his Business Review. He alleges that McDonald's inspected his stores and failed him in eight of nine visits, and put him on a list called Improvement Process for Underperforming Restaurants. *Id.* at ¶¶ 361–62. McDonald's also refused to change that designation. *Id.* at ¶¶ 362–63. Again, that's not enough to state a claim of race discrimination.

Service also alleges that he sold his stores in 2020, and did so "for less than what McDonald's sold similar franchised stores during that timeframe." *Id.* at ¶ 365. That's not a claim.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## IX. Melvin Jones (Plaintiff #9)

Jones entered McDonald's system on December 31, 1998, and exited McDonald's system on February 1, 2018. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and February 1, 2018, when Jones exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and February 1, 2018. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about McDonald's approving a nearby store in 2015. *See* Second Am. Cplt., at ¶ 375 (Dckt. No. 79).

The complaint does contain some timely allegations. Jones alleges that McDonald's rejected a request for rent relief in 2016, which he alleges was "common place for Black owner/operators." *Id.* at ¶ 376. McDonald's also deemed him ineligible to grow in 2016 to 2018 after unfavorable business reviews. *Id.* at ¶ 377. Those allegations do not give rise to a plausible inference of discrimination on the basis of race.

Jones alleges that he could not sell his store to his preferred buyer in 2016 because McDonald's "had the store reserved" for two white owner-operators to consider first. *Id.* at ¶ 380. The potential white buyers backed out, so Jones went back to his preferred buyer, who eventually backed out, too. *Id.* at ¶ 381. That's not enough to state a claim.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## X. Arthur Scott (Plaintiff #10)

Scott entered McDonald's system on November 1, 1994, and exited McDonald's system on April 13, 2017. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 13, 2017, when Scott exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 13, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the denial of a request to buy profitable stores in 2013, and the refusal to allow his daughter to join the NextGen program in 2015. *See* Second Am. Cplt., at ¶¶ 393–95 (Dckt. No. 79).

The complaint does contain some timely allegations. The complaint alleges that Scott wanted to sell his stores to a particular buyer, but McDonald's rejected the deal. *Id.* at ¶ 398. Scott later sold the stores to a different buyer at a lower price. *Id.* at ¶ 399. That allegation does not allege discrimination on the basis of race.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XI. Yvonne Knox (Plaintiff #11)

Knox entered McDonald's system on November 1, 1981, and exited McDonald's system on June 1, 2016. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

**XII. Lisa Gunter (Plaintiff #12)**

Gunter entered McDonald's system on August 1, 2007, and exited McDonald's system on November 1, 2018. She brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and November 1, 2018, when Gunter exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and November 1, 2018.

The complaint does contain some timely allegations. Gunter alleges that McDonald's imposed significant renovation demands, which were costly. *Id.* at ¶ 418. She alleges that renovation demands had a disproportionate impact on black franchisees. *Id.* at ¶ 419.

A claim under section 1981 requires purposeful discrimination, so an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) ("In order to prevail under § 1981, a plaintiff must prove purposeful discrimination."); *Franklin v. City of Evanston*, 384 F.3d 838, 848 (7th Cir. 2004) ("[E]qual protection claims, like § 1981 claims, require a showing of discriminatory treatment and cannot be supported by proof of disparate impact."); *Little v. JB Pritzker for Governor*, 2021 WL 3666429, at *14 n.11 (N.D. Ill. 2021) ("Intentional discrimination claims under § 1981 cannot be supported by evidence of disparate impact."); *Mozee v. American Commercial Marine Service Co.,* 940 F.2d 1036, 1051 (7th Cir. 1991) ("[D]isparate impact does not support section 1981 liability since intentional discrimination is required."); *Melendez v. Illinois Bell Tel. Co.*, 867 F. Supp. 637, 644 (N.D. Ill. 1994), *aff'd*, 79 F.3d 661 (7th Cir. 1996) ("The critical element in a Section 1981 claim is a showing of intentional discrimination.").

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling

agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XIII. Michael Simon (Plaintiff #13)

Simon entered McDonald's system on December 3, 2013, and exited McDonald's system on September 18, 2017. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and September 18, 2017, when Simon exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and September 18, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the revoke of his rewrite in February 2016. *See* Second Am. Cplt., at ¶ 427 (Dckt. No. 79).

The complaint does contain some timely allegations. Simon alleges that he could not afford the reinvestments and renovations that McDonald's demanded. So he sold his store for less than he wanted, because McDonald's required the new owner to incur the rebuild costs. *Id.* at ¶¶ 429–34. Simon alleges that he "was forced to succumb to pressure from McDonald's to sell his stores to . . . a White owner/operator." *Id.* at ¶ 429. That allegation does not contain enough facts to give rise to a plausible inference of discrimination on the basis of race.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XIV. John Mason (Plaintiff #14)

Mason entered McDonald's system on November 21, 2003, and exited McDonald's system on November 21, 2016. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and November 21, 2016, when Mason exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and November 21, 2016. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the refusal to allow Mason to buy another store in 2014. *See* Second Am. Cplt., at ¶ 447 (Dckt. No. 79).

The complaint does contain some timely allegations. Mason alleges that he sold his four stores in 2016 at a loss. *Id.* at ¶ 451. Mason alleges that McDonald's blocked his son from entering into the NextGen program, even though it admitted the children of white owner-operators. *Id.* at ¶ 452. That's not enough to give rise to a plausible inference of discrimination on the basis of race. (This Court will put to one side whether Mason, as opposed to his son, has a claim based on the refusal by McDonald's to admit his son into a program.)

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XV. George Gipson (Plaintiff #15)

Gipson entered McDonald's system on November 14, 1996, and exited McDonald's system on March 1, 2017. He brings three claims.

Gipson was not a plaintiff in the original complaint filed in July 2020. Gipson joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 1, 2017, when Gipson exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and March 1, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the failure by McDonald's to rebuild or renovate within two years of buying the store in 2005. *See* Second Am. Cplt., at ¶ 472 (Dckt. No. 79). Another example is the set of

allegations about the disagreement between a McDonald's training officer and Scott's daughter, which led to extra inspections and negative write-ups. *Id.* at ¶¶ 473–75.

The complaint does contain some timely allegations. Scott alleges that McDonald's did not approve a proposed sale to a buyer. *Id.* at ¶ 481. Instead, McDonald's terminated his franchise, and sold the store to an operator of its choice. *Id.* at ¶ 482. That allegation does not give rise to a plausible inference of discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XVI. Bonnie Gipson (Plaintiff #16)

Gipson entered McDonald's system on November 14, 1996, and exited McDonald's system on March 1, 2017. She brings three claims.

Gipson was not a plaintiff in the original complaint filed in July 2020. Gipson joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 1, 2017, when Gipson exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and March 1, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the failure by McDonald's to rebuild or renovate within two years of buying the store in 2005. *See* Second Am. Cplt., at ¶ 472 (Dckt. No. 79). Another example is the set of allegations about the disagreement between a McDonald's training officer and Scott's daughter, which led to extra inspections and negative write-ups. *Id.* at ¶¶ 473–75.

The complaint does contain some timely allegations. Scott alleges that McDonald's did not approve a proposed sale to a buyer. *Id.* at ¶ 481. Instead, McDonald's terminated her franchise, and sold the store to an operator of its choice. *Id.* at ¶ 482. That allegation does not give rise to a plausible inference of discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XVII. Kenneth Nelson (Plaintiff #17)

Nelson entered McDonald's system on June 15, 1994, and exited McDonald's system on October 27, 2012. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XVIII. David White (Plaintiff #18)

White entered McDonald's system on May 2, 1997, and exited McDonald's system on April 4, 2018. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 4, 2018, when White exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 4, 2018. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about retaliation by McDonald's in 2013. *See* Second Am. Cplt., at ¶ 498 (Dckt. No. 79).

The complaint does contain some timely allegations. White alleges that McDonald's imposed excessive standards on him when it came to inspections, and did not hold white owner-operators to the same stringent standard. *Id.* at ¶ 500. He alleges that McDonald's decided that he failed to meet all of its National Franchising Standards in 2017, which meant that he was not eligible for a renewal of his store in 2019. *Id.* at ¶ 501. He also alleges that McDonald's put him in a position to fail, by requiring significant investments to improve the store, which were so costly that he lacked the finances for a rewrite of the store. *Id.* at ¶ 503. White also alleges that he sold his stores at a deflated value in 2018 to a white owner-operator. *Id.* at ¶ 504.

Those allegations do not contain sufficient facts to give rise to a plausible inference of discrimination on the basis of race. The allegations about discriminatory intent are conclusory.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling

agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XIX. Barbara White (Plaintiff #19)

White entered McDonald's system on May 29, 2016, and exited McDonald's system on April 4, 2018. She brings three claims.

White was not a plaintiff in the original complaint filed in July 2020. White joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 4, 2018, when White exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 4, 2018. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about retaliation by McDonald's in 2013. *See* Second Am. Cplt., at ¶ 498 (Dckt. No. 79).

The complaint does contain some timely allegations. White alleges that McDonald's imposed excessive standards on her when it came to inspections, and did not hold white owner-operators to the same stringent standard. *Id.* at ¶ 500. She alleges that McDonald's decided that she failed to meet all of its National Franchising Standards in 2017, which meant that she was not eligible for a renewal of her store in 2019. *Id.* at ¶ 501. She also alleges that McDonald's put her in a position to fail, by requiring significant investments to improve the store, which were so costly that she lacked the finances for a rewrite of the store. *Id.* at ¶ 503. White also alleges that she sold her stores at a deflated value in 2018 to a white owner-operator. *Id.* at ¶ 504.

Those allegations do not contain sufficient facts to give rise to a plausible inference of discrimination on the basis of race. The allegations about discriminator intent are conclusory.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

The claim under section 1982 fails for the same reason as the claim under section 1981. The complaint lacks sufficient factual content to give rise to a plausible inference that McDonald's acted with a discriminatory intent and discriminated against King on the basis of race. The allegations are too conclusory, and do not rise above the speculative level.

Count II is dismissed in its entirety.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XX. Victor Bruce (Plaintiff #20)

Bruce entered McDonald's system on November 15, 1994, and exited McDonald's system on December 29, 2016. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and December 29, 2016, when Bruce exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 29, 2016. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the purchase of his store in 1994. *See* Second Am. Cplt., at ¶¶ 509–12 (Dckt. No. 79).

The complaint does contain some timely allegations. Bruce alleges that McDonald's required him to make expensive renovations to his stores, even though they were low-volume stores. *Id.* at ¶ 515. Bruce also alleges that he sold his stores in 2016. Those allegations do not state a claim of race discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXI. Faye Hobley (Plaintiff #21)

Hobley entered McDonald's system on July 1, 1994, and exited McDonald's system on April 5, 2018. She brings three claims.

Hobley was not a plaintiff in the original complaint filed in July 2020. Hobley joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and April 5, 2018, when Hobley exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 5, 2018. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the operation of restaurants in the 1990s. *See* Second Am. Cplt., at ¶¶ 521–29 (Dckt. No. 79).

The complaint does contain some timely allegations. The complaint alleges that McDonald's offered new stores in the areas to white owner-operators, but not to Mr. Hobley. *Id.* at ¶ 530. When Mr. Hobley passed away in 2017, McDonald's denied Mrs. Hobley a rewrite, despite her past success at running the stores. *Id.* at ¶¶ 531–32. The complaint alleges that she was forced to sell the stores to a white owner-operator, Steve Leonard, in 2018. *Id.* at ¶ 535. That's not a claim. Those allegations do not contain enough factual content to give rise to a plausible inference of discrimination.

Even so, the complaint also alleges that McDonald's offered a store to Mrs. Hobley at a rental rate of 14%, which she rejected. *Id.* at ¶ 538. "The VP who made the offer to Mrs. Hobley responded that 'the rent is, what the rent is.'" *Id.* Sometime later (the complaint doesn't say when), McDonald's offered the same store to Leonard at an 11% rental rate, but earlier offered the same store to Mrs. Hobley at a 14% rental rate. In other words, she alleges that McDonald's offered a store to her at one price, but offered the same store to a white owner-operator at a lower price. That's a claim.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXII. Paul Hoskins (Plaintiff #22)

Hoskins entered McDonald's system on October 1, 1998, and exited McDonald's system on December 1, 2018. He brings three claims.

Hoskins was not a plaintiff in the original complaint filed in July 2020. Hoskins joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 1, 2018, when Hoskins exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 1, 2018. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the need to make renovations after buying the stores in 2004. *See* Second Am. Cplt., at ¶¶ 546–50 (Dckt. No. 79).

The complaint does contain some timely allegations. Hoskins alleges that McDonald's subjected the stores to inspections, and "unfairly fail[ed]" the stores in "subjective categories." *Id.* at ¶ 553. The complaint alleges that, to his knowledge, non-black owner-operators did not receive the same "unfair and discriminatory treatment." *Id.* at ¶ 555. The inspections "created pressure" on Hoskins to sell the stores and exit the system. *Id.* at ¶ 556. Plaintiffs also allege that McDonald's denied a rewrite on the stores. *Id.* at ¶ 551. Those allegations are too general and conclusory. The allegations do not contain enough factual content to give rise to a plausible inference of discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

**XXIII. Michele Hoskins (Plaintiff #23)**

Hoskins entered McDonald's system on October 1, 1998, and exited McDonald's system on December 1, 2018. She brings three claims.

Hoskins was not a plaintiff in the original complaint filed in July 2020. Hoskins joined the case on November 16, 2020, with the filing of the first amended complaint. So that date is the key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 1, 2018, when Hoskins exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 1, 2018. Most of the

allegations in the complaint predate that period, so they're untimely. Examples include the allegations about the need to make renovations after buying the stores in 2004. *See* Second Am. Cplt., at ¶¶ 546–50 (Dckt. No. 79).

The complaint does contain some timely allegations. Hoskins alleges that McDonald's subjected the stores to inspections, and "unfairly fail[ed]" the stores in "subjective categories." *Id.* at ¶ 553. The complaint alleges that, to her knowledge, non-black owner-operators did not receive the same "unfair and discriminatory treatment." *Id.* at ¶ 555. The inspections "created pressure" on Hoskins to sell the stores and exit the system. *Id.* at ¶ 556. Plaintiffs also allege that McDonald's denied a rewrite on the stores. *Id.* at ¶ 551. Those allegations are too general and conclusory. The allegations do not contain enough factual content to give rise to a plausible inference of discrimination.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXIV. Lewis Anderson (Plaintiff #24)

Anderson entered McDonald's system on November 20, 2002, and exited McDonald's system on January 20, 2016. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXV. Hayes Ferrell (Plaintiff #25)

Ferrell entered McDonald's system on June 19, 1989, and exited McDonald's system on April 20, 2017. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 20, 2017, when Ferrell exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 20, 2017. Most of the allegations in the complaint predate that period, so they're untimely. Examples include the

allegations about the acquisition of a store in 1992. *See* Second Am. Cplt., at ¶¶ 575–76 (Dckt. No. 79).

The complaint does contain some allegations that may or may not be timely. But they don't state a claim. Ferrell alleges that McDonald's imposed renovation and rebuilding requirements, which were expensive. Ferrell asked McDonald's for permission to increase prices, but McDonald's refused. That's not a claim.

Count I is dismissed in its entirety.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXVI. Joyce Mance-Roan (Plaintiff #26)

Mance-Roan entered McDonald's system on March 31, 1990, and exited McDonald's system on June 8, 2014. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXVII. Gary Roan (Plaintiff #27)

Roan entered McDonald's system on March 31, 1990, and exited McDonald's system on June 8, 2014. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## XXVIII. LeRoy Walker, Jr. (Plaintiff #28)

Walker entered McDonald's system on September 1, 1984, and exited McDonald's system on March 16, 2015. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

**XXIX. Philip Douglas (Plaintiff #29)**

Douglas entered McDonald's system on April 19, 1997, and exited McDonald's system on January 23, 2014. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

**XXX. Darryl Umphries (Plaintiff #30)**

Umphries entered McDonald's system on December 1, 2002, and exited McDonald's system on December 1, 2014. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

**XXXI. Bernard Saffold (Plaintiff #31)**

Saffold entered McDonald's system in 1990 or 1999 (the parties disagree, but it makes no difference), and exited McDonald's system on April 1, 2010. He brings three claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely.

**Count II** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

**Count III** (fraudulent concealment) is dismissed, for the reasons stated above.

## Conclusion

For those reasons, McDonald's motion to dismiss is granted in part and denied in part.

Date: September 25, 2026

Steven C. Seeger
United States District Judge